67 Wn. App. 292 (1992)
834 P.2d 1051
THE STATE OF WASHINGTON, Respondent,
v.
P.B.T., Appellant.
No. 28586-6-I.
The Court of Appeals of Washington, Division One.
May 26, 1992.
As amended by order August 24, 1992.
Jessica Ryan of Washington Appellate Defender Association, for appellant.
Norm Maleng, Prosecuting Attorney, and Dennis Donchak, Deputy, for respondent.
[As amended by order of the Court of Appeals August 24, 1992.]
KENNEDY, J.
P.B.T, a juvenile at the time of trial, appeals his exceptional sentence for second degree sexual molestation. Because we find that the trial court erred in refusing to allow the appellant to have his counsel present at his predisposition interview, we reverse the judgment and remand for a new predisposition interview and resentencing.

FACTS
On August 11, 1990, while on his way to Camp Hoban, a Boy Scout camp located in Belfair, Mason County, the car in which the appellant was riding broke down. Also in the car was W.H., aged 12 or 13.[1] After the car broke down, the *294 appellant asked W.H. to show him his penis, which he did. The appellant then rubbed W.H.'s penis. W.H. did not ejaculate. This incident occurred in Kitsap County.
Later that evening, at Camp Hoban, the appellant again asked to see W.H.'s penis. W.H. complied, and appellant rubbed W.H.'s penis to the point of ejaculation. At the time of the incident in question, appellant was 16 years old, and a senior patrol leader in the Boy Scouts.
Charges were filed against the appellant in both Kitsap and Mason Counties. The Kitsap County Prosecutor agreed to dismiss the charge in Kitsap County if the charge in Mason County were resolved by May 21, 1991. Soon thereafter, appellant began a private counseling and treatment program with Comte and Associates.
Appellant pleaded guilty to the Mason County charge, and the case was transferred to King County for a disposition hearing. After the case was moved to King County, appellant was represented by counsel Donald Wackerman. Appellant's counsel first received appellant's file on April 10, 1991, and first talked with him by telephone on April 11. Because the Kitsap County charge was still pending, because there had been preliminary discussions regarding special sex offender disposition alternative treatment, and because appellant's attorney had not yet seen the appellant's psychosexual evaluation report from Comte and Associates, appellant's attorney advised appellant not to speak with anyone about the incidents until he could give him advice based upon further analysis.
Appellant had been scheduled for a predisposition interview with Shawn Brown, a caseworker with the King County Juvenile Court, on April 12, and appellant's disposition hearing was originally scheduled for April 24, 1991. A predisposition interview is generally conducted by a caseworker who then prepares a report in order to assist the trial court in sentencing by independently informing the court of the circumstances surrounding the juvenile offender and the offense.
*295 Apparently because of appellant's counsel's advice not to speak about the incidents, appellant's family canceled the scheduled predisposition interview. As a result, the caseworker was unable to complete a disposition report by the disposition hearing date.
The court continued the disposition hearing in order to give the caseworker an opportunity to complete the disposition report. Despite the request of appellant, his counsel, and the prosecutor, the court also ruled that defense counsel was not entitled to attend the predisposition interview. Although the caseworker stated that the predisposition interview was not to concern any psychological or sexual evaluation because that had already been conducted privately, both defense counsel and the prosecutor expressed concern that appellant's Fifth Amendment rights might be violated, with respect to the pending Kitsap County charge, if counsel were not allowed to be present at the interview. Both defense counsel and the prosecutor also indicated that defense counsel should be present if any sexual or psychological evaluation occurred. The court then rescheduled the disposition hearing to May 15, 1991, adhering to its ruling that appellant's counsel could not attend the predisposition interview.
Because Ms. Brown by then was on vacation, the disposition report was prepared by Mr. Bernhardt. Because counsel was not present, the appellant refused to talk with Bernhardt, and the disposition report was prepared without any input from appellant. Since the appellant refused to discuss the case, no sentence recommendation was made by Bernhardt. In particular, Bernhardt was unable to conclude whether the appellant might be at risk to reoffend, although Bernhardt noted that he believed that there was a higher likelihood of reoffense than the psychosexual evaluation prepared by Comte and Associates indicated.
At the disposition hearing, both the State and defense counsel recommended 12 months of community supervision (based on the recommendation of appellant's private therapists, Comte and Associates) and 40 hours of community *296 service under option B of RCW 13.40.0357 for minor or first-time juvenile offenders.
Based on the record before it, including the psychosexual evaluation, the trial court found that appellant had no prior criminal history and that this was a mitigating factor. The trial court also found that the offense occurred on a scouting trip wherein the appellant occupied a position of trust with respect to the victim, which the court determined to be an aggravating factor. Based upon these circumstances, the trial court found that sentencing under the standard range would constitute a manifest injustice, and therefore imposed 5 days' detention in addition to the community supervision and treatment recommended by the prosecution and defense. The detention has been stayed pending the outcome of the appeal.

DISCUSSION
Appellant contends that the sentence should be reversed, claiming that the trial court erred in forbidding the appellant access to counsel during his predisposition interview and in making a determination of manifest injustice and sentencing the appellant outside the standard range. We consider each of these contentions in turn.

I

Presence of Counsel at Predisposition Interview
Appellant contends that the trial court erred by forbidding the appellant's counsel to be present at appellant's predisposition interview. Appellant bases this objection on his Sixth Amendment right to counsel.[2]
In this state, "[s]entencing is a critical stage of the proceedings, at which a defendant is constitutionally entitled to be represented by counsel." State v. Rupe, 108 Wn.2d 734, 741, 743 P.2d 210 (1987), cert. denied, 486 U.S. 1061, 100 L.Ed.2d 934, 108 S.Ct. 2834 (1988). "Generally, this right exists whenever a court considers any matter in connection *297 with a defendant's sentence." Rupe, at 741. Appellant contends that the predisposition interview is a procedure whereby an arm of the court considers factors which are to be used in a defendant's sentence, and therefore the interview is part of the critical stage of sentencing.
There are no Washington cases which have determined whether a predisposition interview is a critical stage in a juvenile's sentencing which requires that counsel be allowed to be present. In State v. Escoto, 108 Wn.2d 1, 3, 735 P.2d 1310 (1987), the trial court allowed defense counsel to be present at a juvenile's psychological evaluation that was to be used for sentencing. Defense counsel in that case chose not to attend. The Supreme Court made no judgment on the advisability or necessity of allowing such attendance. Escoto.
Another division of this court has held that a court-ordered psychiatric examination is a "critical stage" in a criminal prosecution, and therefore requires the accused to be allowed the right to counsel. See State v. Nuss, 52 Wn. App. 735, 741, 763 P.2d 1249 (1988), review denied, 112 Wn.2d 1010 (1989). Although appellant claims that a predisposition interview is akin to a court-ordered psychological examination because both may be used to determine sentencing, several federal courts have rejected the notion that counsel is required at a presentencing nonpsychological interview if the results are merely to be used to aid the court in sentencing. Brown v. Butler, 811 F.2d 938, 941 (5th Cir.1987) ("We conclude that such an interview [by a probation officer to assist the court in arriving at a fair sentence] is not a critical stage of the proceeding in which counsel's presence or advice is necessary ..."); Baumann v. United States, 692 F.2d 565, 578 (9th Cir.1982) ("We hold that a routine presentence interview of an individual convicted of a noncapital federal offense is not ... a critical stage of the proceeding...").
Relying on the case of United States v. Herrera-Figueroa, 918 F.2d 1430 (9th Cir.1990), appellant contends that "fairness" requires the presence of counsel at a presentencing interview if counsel is specifically requested. A panel of the Ninth *298 Circuit in Herrera-Figueroa determined that if a defendant asked for the presence of counsel at a presentencing interview, this request should be honored in the interest of justice. Herrera-Figueroa, 918 F.2d at 1434. The court noted that trial courts were not consistent in allowing counsel to be present at these interviews, and stated that justice would not be served if such a request were not granted because the defendant would be subject to inconsistent rules and would not have confidence in the fairness of the system, and because the presentence interview has an important effect on the defendant's sentence. Herrera-Figueroa, at 1434-35.
Although we agree that allowing counsel at such interviews may be the better practice and may contribute to a greater appearance of fairness, we do not think that such a practice is mandated by the constitution or the requirements of the orderly administration of justice.
In any event, we need not reach the issue of whether counsel is required at every predisposition interview under the Sixth Amendment right to counsel, or in the interests of the appearance of fairness, because under the peculiar facts of the present case, the trial court's refusal to allow counsel at the appellant's disposition interview violated his Fifth Amendment rights.[3]
In Miranda v. Arizona, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974 (1966), the United States Supreme Court reemphasized the longstanding rule that "`[n]o person ... shall be compelled in any criminal case to be a witness against himself,' and that `the accused shall ... have the Assistance of Counsel'". Miranda, 384 U.S. at 442. This right to remain silent enshrined in the Fifth Amendment includes the promise that silence or failure to speak cannot be used against a person in a criminal prosecution. Miranda, 384 U.S. at 468.
*299 [1] At the time of the appellant's predisposition interview, another charge of sexual molestation involving the same victim was pending in Kitsap County. A defendant may well feel "compelled to confess" in a predisposition interview because of the very nature of a predisposition interview  one purpose of which is to present mitigating circumstances such as an awareness of harm to the victim, or contriteness. It is, therefore, logical to conclude that during the scope of this interview the related circumstances concerning the Kitsap County charge likely would have been discussed. The appellant had the right to remain silent regarding any facts which could have been used against him with respect to the Kitsap County charge. However, by forbidding the appellant access to his counsel during the predisposition interview for the Mason County charge, the trial court removed the means by which the appellant intelligently could distinguish comments regarding the Kitsap County charge from other comments which could be made in the disposition interview without touching upon or otherwise being incriminating with respect to the Kitsap County charge. Because of the court order, appellant had no counsel present for the discussion and therefore elected to remain entirely silent.
An examination of the record before us indicates that appellant's silence may have been used against the appellant with respect to the disposition of the Mason County charge. The caseworker conducting the predisposition interview indicated that he was unable to determine whether the appellant showed the appropriate response to the effect of his actions on the victim. The caseworker also indicated that he believed the reoffense risk was higher than indicated by the privately prepared psychosexual evaluation. These "negative" comments might have been eliminated if the appellant had completed the interview. The caseworker could have asked the appellant questions which might have provided other mitigating factors which, when taken into account by the trial court, might have prevented the imposition of an exceptional sentence of detention.
*300 The presence of counsel could have preserved appellant's right to remain silent as to the pending charge, while still leaving the opportunity to participate in the predisposition interview in a meaningful way. Therefore, appellant's silence, which is his right with respect to a pending charge, was used in a manner that may have negatively affected his sentence.
We hold, therefore, that in the peculiar circumstances where a juvenile wishes a predisposition interview but is concerned about his Fifth Amendment rights with respect to closely related pending charges, that juvenile has the right, under Miranda, to have his attorney present for the purpose not of disrupting the proceeding, but only to assist the client in preserving that client's Fifth Amendment right against self-incrimination with respect to the closely related pending charge.
The imposition of the exceptional sentence is reversed, and the case is remanded for resentencing. On remand, the court is to grant another predisposition interview. Counsel's right to be present depends on (1) whether there remain any closely related pending charges, and if so, (2) whether there is an affirmative request for counsel.
Although we have already determined that resentencing is required, we address appellant's second assignment of error in order to provide guidance to the trial court upon remand.

II

Was There Evidence of Manifest Injustice
The appellant also contends that the imposition of detention time should be reversed because there was no justification for concluding that a sentence within the standard range would effectuate a manifest injustice.
A court may impose a sentence outside the standard range for a juvenile offender if it determines that a sentence within the standard range would "effectuate a manifest injustice". RCW 13.40.160(1). "`Manifest injustice' means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society *301 in light of the purposes of this chapter". RCW 13.40.020(12).
A finding of manifest injustice must be supported by "clear[, cogent,] and convincing evidence." RCW 13.40.160(1). To uphold such a finding on appeal, an appellate court must determine that the reasons relied upon by the trial court "clearly and convincingly" support the finding of manifest injustice. RCW 13.40.230(2). In reviewing the finding, an appellate court is to engage in a 3-part test:
(1) the reasons given by the trial court must be supported by the record; (2) those reasons must clearly and convincingly support the disposition [of a manifest injustice determination]; and (3) the disposition cannot be too excessive or too lenient.
State v. P, 37 Wn. App. 773, 777, 686 P.2d 488 (1984) (quoting State v. Rhodes, 92 Wn.2d 755, 600 P.2d 1264 (1979)).
In the present case, the appellant challenges the exceptional sentence based upon the first prong  that the reason given by the trial court for the finding of manifest injustice is not supported by the record.[4]
[2] Although the reason given by a court must support a determination of manifest injustice beyond a reasonable doubt (Rhodes, 92 Wn.2d at 760), the reason itself need only be supported by substantial evidence in the record. State v. Brown, 55 Wn. App. 738, 752, 780 P.2d 880 (1989), review denied, 114 Wn.2d 1014 (1990). "This is a factual inquiry and the trial court's findings will be upheld unless they are `clearly erroneous.'" Brown, at 752; see also State v. Grewe, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991).
[3] The reason cited by the trial court for its finding of manifest injustice and for the sentence outside the standard range was that the offense occurred on a scouting expedition where the appellant was placed in a position of trust. The record clearly indicates that the appellant was acting in *302 his capacity as senior leader on a scouting trip when the incident occurred, but the appellant contends that the fact that he was a senior patrol leader at the time of the incident is not enough evidence to support a finding that he abused a position of trust.[5] Specifically appellant contends that there had not been enough time to establish a trust relationship and that the alleged position of trust was not used to facilitate the crime.[6] Since decisions interpreting the Sentencing Reform Act of 1981 (SRA) may be used in cases arising under the Juvenile Justice Act of 1977 where there is no contrary intent (State v. Wall, 46 Wn. App. 218, 221, 729 P.2d 656 (1986)), we use SRA case law for guidance as well as cases arising under the Juvenile Justice Act of 1977.
[4] In Grewe, 117 Wn.2d at 211, this state's Supreme Court stated that the two factors to be considered when determining whether abuse of trust occurred in an indecent liberties case for purposes of an exceptional sentence under the SRA are the duration and the degree of the relationship. Grewe, 117 Wn.2d at 218.
Looking at the first factor, there is no evidence in the record that the appellant was acquainted with the victim at any time before the day the offenses occurred. In dicta, the Supreme Court has indicated that a relationship of 5 days may not be sufficient to create a position of trust between an offender and his victim. See State v. Fisher, 108 Wn.2d 419, 427, 739 P.2d 683 (1987). Nevertheless, we believe the appellant was in a position that one would expect to engender trust even without a prior existing relationship. *303 He was a senior patrol leader on a trip with younger scouts. Appellant's position was of a type where trust and respect would automatically be expected from the younger scouts. In such a case the length of the relationship is relatively unimportant.
In the case of State v. Strauss, 54 Wn. App. 408, 773 P.2d 898 (1989), this court indicated in dicta that a position of trust may be abused simply because a party assumes the guise of one in whom trust is routinely placed, even if the parties have not previously been acquainted. Strauss, at 421 ("it is certainly possible that Strauss or any other rapist might be found to have presumed upon a position of trust by posing as a security guard or police officer...").
[5] It is true, as pointed out by the appellant, that the court cannot find an abuse of trust based merely on the offender's position of authority. See State v. Marcum, 61 Wn. App. 611, 614, 811 P.2d 963 (1991). However, in the present case, the evidence supports a finding of a position of trust as well as a position of authority. Although as a senior scout leader the younger scouts may have been required to obey the appellant, they would also be expected to trust him to assist them, to instruct them, and to attempt to keep them from harm. As stated in Marcum, at 615, "[a] position of authority frequently coincides with or overlaps a position of trust ...". The trial court did not find that the appellant compelled the victim by his position of authority, but that the incident occurred while appellant occupied a position of trust.
The appellant contends that even if he were in a position of trust the evidence cannot support a finding of abuse of trust. Specifically, the appellant contends that the evidence must show that the position of trust helped facilitate the commission of the crime before it can be used as an aggravating factor.
[6] Washington law is clear that before an abuse of trust can be used as an aggravating factor, the evidence must indicate that the position of trust was used to facilitate the crime. State v. Stevens, 58 Wn. App. 478, 500, 794 P.2d 38, *304 review denied, 115 Wn.2d 1025 (1990). Mere opportunity created by a person's position is not enough from which to conclude that the position of trust facilitated the commission of the crime. State v. Stuhr, 58 Wn. App. 660, 663, 794 P.2d 1297 (1990), review denied, 116 Wn.2d 1005 (1991). In Stuhr, a guest in a victim's home beat and shot the victim, and the court held that an abuse of trust could not be used as an aggravating factor in sentencing because there was no evidence that the perpetrator had used trust to gain entrance into the home or to otherwise facilitate the commission of the crime. Stuhr, at 662-63. Appellant contends that under the reasoning of the Stuhr case, he cannot be accused of abusing a position of trust because there is no evidence that he used this trust to facilitate the commission of the crime. Appellant misconstrues the holding of Stuhr.
Despite the language of the Stuhr case, no abuse of trust was found there because no trust relationship or position of trust existed, not because there was a trust relationship that was not used in the commission of the crime. The facts of Stuhr clearly indicate that the perpetrator was not invited into the victim's home or able to commit the murder because he had a position of trust. There was no evidence of any relationship which could give rise to a position of trust.
By contrast, in the present case, the appellant's position as senior patrol leader indicates that he enjoyed a position of trust with his victim at the time of the commission of the crime. That there is no direct evidence that the position of trust was relied upon to perpetrate the crime is unimportant, as long as there is evidence which logically could lead to the conclusion that the crime was facilitated by the position of trust. In Brown, this court held that the perpetrator abused a position of trust to facilitate the crime of rape because of his status as afternoon caretaker of the victim. Brown, 55 Wn. App. at 754. Neither the trial court nor the appeals court cited evidence that the sexual abuse specifically occurred or was facilitated because of the perpetrator's status as caretaker. Brown, at 752. The fact that the crime *305 occurred while the position of trust existed logically led the court by inference to the conclusion that the perpetrator used his position of trust to facilitate the crime. Brown, at 752-54.
Similarly, in the present case, the sexual molestation occurred on a scouting trip while the perpetrator enjoyed a position of trust with respect to the victim. This is a sufficient basis from which to find that the appellant used his position of trust to facilitate the crime because of the logical inference that arises from his enjoying a position of trust during the commission of the crime. Therefore, the reason given for the exceptional sentence is supported by the record, justifying a deviation from the standard range, unless at the new disposition other factors which might come to light cause the court to conclude that a sentence within the standard range would not constitute a manifest injustice.
The sentence is reversed and the case is remanded for resentencing in accordance with this opinion.
WEBSTER, A.C.J., and AGID, J., concur.
Review denied at 120 Wn.2d 1021 (1993).
NOTES
[1] The record is not clear as to W.H.'s age at the time of the incident.
[2] Although the Sixth Amendment is argued on appeal, at the proceedings below, appellant also claimed a right to counsel at his predisposition interview based on the Fifth Amendment.
[3] Although appellant did not appeal based on the Fifth Amendment ground, this court has a "long-standing practice of addressing error where justice clearly demands we do so." State v. Valladares, 31 Wn. App. 63, 75-76, 639 P.2d 813 (1982), aff'd in part, rev'd in part, 99 Wn.2d 663, 664 P.2d 508 (1983). Furthermore, the Fifth Amendment was argued below, so that the trial court had the opportunity to rule on that theory.
[4] Appellant appears to concede that if the record supports a finding of abuse of trust, this finding is sufficient to impose the exceptional sentence, and that the sentence was not too excessive.
[5] Although the respondent correctly notes that the court did not specifically state "abuse of trust" as an aggravating factor, the court's stated reason for an exceptional sentence is logically construed as "abuse of trust", a recognized aggravating factor under Washington law. Despite respondent's contention, the trial court did not say that appellant was in a position of "authority" but instead said a position of "trust". Abuse of a position of "authority" has yet to be recognized as a valid reason for imposing an exceptional sentence. State v. Marcum, 61 Wn. App. 611, 614, 811 P.2d 963 (1991).
[6] Appellant makes no claim that an abuse of trust is subsumed as an element of the crime or was already considered by the Legislature in establishing the standard sentence range.