[No. 22719-3-II. Division Two. December 11, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. CURTIS
WALKER, *Appellant*.

384

*Gary B. Bashor,* for appellant (appointed counsel for appeal).

*James J. Stonier, Prosecuting Attorney,* and *A.O. Denny, Deputy,* for respondent.

BRIDGEWATER, A.C.J. — Curtis Walker appeals the trial court's imposition of a 90-day "less restrictive course of treatment" following the State's petition for a 14-day involuntary detention due to his mental illness. We hold that the trial court properly ordered nursing home care or, alternatively, in-home care with his wife's consent. We affirm.

Walker suffers from dementia. The State detained Walker on October 29, 1997, after his wife became unable to deal with him, and he threatened to kill her. The State filed a petition requesting that the court order a 14-day involuntary treatment detention under RCW 71.05.240. On November 3, 1997, the State held a probable cause hearing as required by the statute.

Dr. Robert L. Love testified that he examined Walker for the purposes of determining whether the State's petition should be granted. He testified Walker suffers from "dementia, with considerable agitation." At the time of the examination, Walker was confused and unaware of time and place. He was unable to provide for his essential needs and care, and he had become too difficult for his wife to care

for. Dr. Love recommended that Walker receive a less restrictive alternative to detention and testified that a nursing home would best provide for his needs and keep him and his wife safe. Walker's counsel questioned Dr. Love about the possibility of in-home care. Dr. Love testified that a nursing home was a better alternative, but that in-home care might be successful if Walker continued to take his medication and if a home nurse checked on him periodically.

The trial court ordered a 90-day less restrictive alternative treatment in lieu of a 14-day detention. The court ordered two treatment options, stating: "The Order will be either a nursing home, or . . . maintain medication, maintain a home nurse, and that is with the wife's consent and approval."

## I. Mootness

■ Initially, we address whether the matter is moot. Generally, this court may not consider a case if the issue presented is moot, or in this case, "when 'the detention which is the subject of this appeal has already ended' and the court cannot 'provide effective relief.' " *In re Detention of R.R.*, 77 Wn. App. 795, 799, 895 P.2d 1 (1995) (quoting *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983)). Walker's 90-day treatment has ended and this court can no longer provide relief from treatment. But he contends his appeal should be heard for two reasons: (1) the mootness doctrine effectively precludes any review of civil commitment cases, and (2) the issues presented are of continuing public interest.

First, Walker argues that the involuntary commitment time usually expires before an appeal can be heard, which renders meaningless RAP 2.2(a)(8), governing an appeal from orders of commitment. We reject this argument. Appeal from an involuntary commitment order is not totally precluded by the mootness doctrine because a person invol-

untarily committed can file for accelerated review under RAP 18.12.[1]

■ Alternatively, Walker contends that the issues presented are of sufficient public import that the court should nevertheless decide them. Where a case is moot, the court may nonetheless decide it if it involves "matters of continuing and substantial public interest." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). The criteria to be considered in determining whether a sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur. *Sorenson*, 80 Wn.2d at 558.

In *Cross*, the court addressed similar jurisdiction and notice challenges following Cross's involuntary treatment commitment and determined the issues should be reviewed even though Cross had been released. *Cross*, 99 Wn.2d at 376-77. The court stated:

> The central issues are whether the Commissioner had authority to act in the manner he did and whether the notice given Ms. Cross was sufficient. The question of a judicial officer's authority is certainly public in nature. An awareness on the part of such officers of the scope of their authority is crucial and consideration of the arguments made before us and the statutory scheme governing civil commitment convinces us that clarification is necessary. Similarly, it is important that mental health professionals such as respondents understand the nature and purpose of the notice which they must provide to committed persons whose less restrictive treatment they seek to revoke. Finally, the likelihood of recurrence is high.

*Cross*, 99 Wn.2d at 377-78. Similarly, we agree to review Walker's jurisdiction and notice claims.

## II. Jurisdiction

Walker contends that the Superior Court Mental Proceed-

---

[1]"The appellate court on its own motion or on motion by a party may set any review proceeding for accelerated disposition. . . ." RAP 18.12.

ings Rules (MPR) contradict the statute governing involuntary commitment hearings and do not allow the court to impose any detention or involuntary treatment for more than 14 days.

RCW 71.05.240 states, in part:

> If a petition is filed for fourteen day involuntary treatment or ninety days of less restrictive alternative treatment, the court shall hold a probable cause hearing within seventy-two hours of the initial detention of such person . . . .

> At the conclusion of the probable cause hearing, if the court finds by a preponderance of the evidence that such person, as the result of mental disorder, presents a likelihood of serious harm, or is gravely disabled, and, after considering less restrictive alternatives to involuntary detention and treatment, finds that no such alternatives are in the best interests of such person or others, the court shall order that such person be detained for involuntary treatment not to exceed fourteen days in a facility certified to provide treatment by the department. *If the court finds that such person, as the result of a mental disorder, presents a likelihood of serious harm, or is gravely disabled, but that treatment in a less restrictive setting than detention is in the best interest of such person or others, the court shall order an appropriate less restrictive course of treatment for not to exceed ninety days.*

(Emphasis added.)

MPR 1.4 also addresses the less restrictive treatment alternative. It states, in part:

> *As an alternative to detention*, where the court makes a finding or a special verdict is returned that the respondent should receive less restrictive alternative treatment, the court may order such *less restrictive alternative treatment for no longer than the period for which the respondent could have been committed at the hearing.*

MPR 1.4(a) (emphasis added).

Walker contends that MPR 1.4(a) allows only for a 14-day less restrictive alternative because a respondent can be detained for only 14 days under RCW 71.05.240. He

contends "committed" is the same as "detained." Accordingly, he argues that because MPR 1.4(a) and RCW 71.05.240 conflict, MPR controls and the court can impose only a 14-day involuntary treatment. His argument has two flaws: (1) "committed" does not mean "detained" in this context, and the provisions therefore do not conflict; and (2) even if they did conflict, the statute controls.

■■ When a court rule and a statute are in apparent conflict, " '[a]ll provisions should be harmonized whenever possible, and an interpretation which gives effect to both provisions is the preferred interpretation.' " *State v. W.W.*, 76 Wn. App. 754, 757, 887 P.2d 914 (1995) (quoting *Emwright v. King County*, 96 Wn.2d 538, 543, 637 P.2d 656 (1981)). The State argues that Walker's interpretation is incorrect because it necessarily assumes that "committed," as used in MPR 1.4(a), means the same thing as "detained," as used in RCW 71.05.240. The State is correct that the terms do not mean the same thing, and this reading gives effect to both provisions.

RCW 71.05.240 states that if a less restrictive alternative is not appropriate, a respondent may "be *detained* for involuntary treatment not to exceed fourteen days . . . ." (Emphasis added.) It further states that the court may order "*treatment* in a less restrictive setting than *detention* . . . ." RCW 71.05.240 (emphasis added). Detention specifically refers to the 14-day treatment option. MPR 1.4(a) states that if *detention* is not appropriate, the court can order treatment for no longer than "the period for which the respondent could have been *committed* at the hearing." It does not say no longer than the time for which respondent could have been *detained*.[2] The MPR drafters could have used detained instead of committed, but did not. We find that MPR 1.4 was not intended to limit the less restrictive alternative to 14 days. Thus, the rule and statute do not

[2]Additionally, although "commit" can mean "[t]o send a person to prison" or "to a mental health facility," it is not limited to that definition and can also mean "to entrust" or "to pledge." *See* BLACK'S LAW DICTIONARY 273 (6th ed. 1990). Accordingly, it does not necessarily mean to detain, as argued by Walker.

conflict, and the court has jurisdiction under RCW 71.05.240 to order a less restrictive alternative for up to 90 days.

██ Alternatively, as the State argues, even if there is a conflict, the statute, and not the rule, controls. "When a court rule and a statute conflict, the nature of the right at issue determines which one controls. If the right is substantive, then the statute prevails; if it is procedural, the court rule prevails." *W.W.*, 76 Wn. App. at 758 (citations omitted). The amount of time for which a person may be involuntarily committed implicates a substantive and not a procedural right. Accordingly, the statute prevails, and the statute allows for a 90-day less restrictive alternative treatment.

██ Walker also argues that RCW 71.05 is internally inconsistent. Specifically, RCW 71.05.310, the section governing procedures for 90-day treatment petition hearings, requires "clear, cogent and convincing evidence" before imposing 90-day treatment. RCW 71.05.240 requires a probable cause hearing for 14-day treatment petitions but allows 90-day treatment to be imposed with this lesser standard of proof. He argues the provisions are therefore inconsistent because there are two standards of proof for 90-day treatment. However, RCW 71.05.310 concerns petitions to extend treatment for an additional 90 days following the first imposition of treatment at the probable cause hearing. There is no inconsistency; Walker's argument fails.

## III. Notice

██ Walker contends that because the petition requesting involuntary treatment asked for a 14-day detention and not the 90-day option, it failed to give adequate notice as required by article I, section 3 of the Washington Constitution. Due process requires notice reasonably calculated to apprise a party of proceedings that will affect him. *See Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 511 P.2d 1002 (1973). However, Walker did not raise nor argue the notice issue below and is, therefore, precluded

from raising it for the first time on appeal. RAP 2.5(a). However, while this court need not address this alleged error, we choose to address it as if it were properly preserved.

 But the argument is nevertheless meritless. The State proceeded under RCW 71.05 and requested a 14-day involuntary treatment. RCW 71.05.240 specifically allows and even requires the trial court to impose a less restrictive alternative for up to 90 days. Thus, the statute gives a respondent notice that this might be a treatment option.

Walker cites *In re Detention of R.P.*, 89 Wn. App. 212, 948 P.2d 856 (1997), arguing that "failure to provide the patient notice of the requested relief, seems to run contrary to any accepted notion of fundamental fairness." However, *R.P.* states only that "[d]ue process requires that the State provide the respondent with sufficient notice of the *facts* supporting the petition for commitment." 89 Wn. App. at 216 (citing *Cross*, 99 Wn.2d at 382) (emphasis added).

Here, the petition alleged that Walker was "gravely disabled" because he was confused, "not oriented to time and place," and "threaten[ed] to kill his wife." It further stated that Dr. Love recommended Walker "be committed for up to fourteen days for further observation, treatment and safety." This sufficiently notified Walker of the *facts* supporting the petition for involuntary treatment. That it did not also state that a lesser restrictive treatment was an option does not violate the notice requirements. Additionally, if the court were not able to order 90-day treatment when not requested in the petition, a respondent who showed improvement after the petition was filed, but before the hearing, would be precluded from having a less restrictive treatment. Walker's argument fails.[3]

Affirmed.

---

[3]Walker also raises a claim that the nursing home care is not actually less restrictive than detention. This is a factual claim. The issue was not raised below. No facts were presented, no argument made, no record established as to the care in the nursing home, and no objection was made to the alternative of nursing home care. We will not consider factual matters not raised below. RAP 2.5(a).

A<small>RMSTRONG</small> and H<small>UNT</small>, JJ., concur.