110 P.3d 773 (2005)
126 Wash.App. 786
In the Matter of the DEPENDENCY OF J.R.U.-S., a minor child.
State of Washington Department of Social and Health Services, Appellant,
Marisol Willis and Reynard Smith, Respondents.
No. 54019-0-I.
Court of Appeals of Washington, Division 1.
April 11, 2005.
*775 Trisha L. McArdle, Office of the Atty. Gen., Seattle, WA, for Appellant.
Thomas Kummerow, Seattle, WA, for Respondent Marisol Willis.
Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, WA, for Respondent Reynard Smith.
Lori Larcom Irwin, King Co. Superior Ct., Seattle, WA, for Guardian Ad Litem J.R.U.-S.
AGID, J.
¶ 1 The parents of J.R.U.-S. ("J.U.") are the subjects of both a criminal investigation and dependency proceedings involving J.U. The principal issue before us is whether the courts in the dependency proceedings abused their discretion when they allowed the parents' counsel to attend court ordered psychological evaluations.
¶ 2 We conclude that while the parents had no constitutional or statutory right to counsel during their evaluations, the courts did not abuse their discretion because the parents' Fifth Amendment rights were implicated, and the immunity statute provides inadequate protection for those rights. We hold, however, that when Fifth Amendment rights are threatened, the courts should enter protective orders granting additional immunity rather than allowing counsel to attend psychological evaluations.

FACTS
¶ 3 Reynard Smith and Marisol Willis are J.U.'s parents. In May, 2003, when J.U. was four months old, they took her to a hospital with a fever, vomiting, and diarrhea. Medical personnel determined that J.U. also had five fractured ribs. When the parents could not explain the injuries, police took J.U. into protective custody.
¶ 4 The next day, a social worker interviewed the parents who denied any involvement in J.U.'s injuries. They believed their babysitter or her husband had caused them. They agreed to place J.U. in foster care pending an investigation.
¶ 5 Doctors discovered additional injuries, including a fractured skull and retinal hemorrhaging, the next day. J.U. was having trouble maintaining her heart rate and needed assistance with breathing. Because her injuries were consistent with physical abuse, a criminal investigation began. No charges have yet been filed against either parent.
¶ 6 On June 6, 2002, the Department filed a dependency petition. The parents entered agreed dependency and dispositional orders. They also agreed to participate in services, but they asked for hearings to determine whether they should undergo psychological evaluations.
*776 ¶ 7 At the father's hearing, the Department argued that evaluations were necessary to assess whether underlying psychological conditions posed a future threat to J.U. The Department maintained that the purpose of the evaluations was not to determine whether the parents had caused J.U.'s injuries, but rather to determine whether they could protect her from future harm. The father opposed any evaluation, arguing that his Fifth Amendment rights would be infringed because the available statutory immunity was inadequate and the evaluator would be statutorily required to report any evidence of abuse to law enforcement. He requested that counsel be present during any evaluation and he be given complete immunity.
¶ 8 A court commissioner ordered the evaluation and granted the father's request to have counsel attend. The court also restricted dissemination of the evaluation to parties and treatment providers. The Department moved for revision. The superior court denied the motion, ruling that the Commissioner's decision was appropriate given the immunity statute and CR 35.
¶ 9 The Department moved for reconsideration and/or clarification of the court's order. In response, the court stated in part:
[I]n the case before this court, the party who has been court ordered to undergo a psychological evaluation has not been convicted of any criminal offense, is still under investigation for possible criminal charges arising out of the injuries suffered by the dependent child and does have the right to invoke his 5th amendment privilege to not incriminate himself.... Additionally, R.C.W. 26.44.053 does not purport to grant immunity from prosecution.... The court's inartful reference to Civil Rule 35 was only to illustrate that in civil litigation where the physical or mental capacity of a party is at issue, it is contemplated that the party being examined may have a representative present. The Department's argument ... seemed to focus on how having another person present would detract from the quality of the evaluation.
Therefore, defense counsel may be present at the evaluation and may interpose objections on the grounds of the defendant's right to not incriminate himself....
(Emphasis omitted.)
¶ 10 Following the mother's hearing, a different judge reached the same conclusions and granted her request to have counsel present during her evaluation. The court also ruled that the mother's evaluation would be sealed and disclosed only to the parties. The order allowed the parties to file a motion to seek further disclosure.

DECISION

I.
¶ 11 We first address the Department's contention that the courts abused their discretion in allowing counsel to attend the evaluations.[1] The Department challenges the courts' decisions on several grounds, which we address separately below.[2]

Threat to Fifth Amendment Rights/Statutory Immunity
¶ 12 First, the Department contends the evaluations did not threaten the parents' Fifth Amendment rights because they were not under oath and were not in custody or "compelled" to incriminate themselves. But the Fifth Amendment privilege does not apply only when a person is under *777 oath. The privilege protects a defendant from being compelled to provide evidence of a "`testimonial or communicative nature[.]'"[3] It may be raised in any proceeding, "civil or criminal, formal or informal, where the answers might incriminate [the questioned person] in future criminal proceedings."[4] There is no requirement that the questioned person be under oath.
¶ 13 Nor is the privilege available only when a person is in custody or under compulsion to speak. In general, the privilege may be invoked whenever circumstances indicate that a real and substantial danger of incrimination exists.[5] The privilege is normally not self-executing and must be asserted.[6] But when compulsion is present, the privilege is self-executing and, at that point, a right to counsel may arise.[7] Although the question whether the parents had a right to counsel in the evaluations does not resolve the issue before is, we agree with the Department that the parents were not under compulsion to speak, and therefore had no right to counsel in their evaluations.
¶ 14 In general, compulsion exists when a person is either subjected to custodial interrogation,[8] ordered to produce incriminating evidence,[9] or threatened with serious penalties if the evidence is not produced.[10] The first two types of compulsion are not present here. The parents were not subjected to custodial interrogation. And while they were ordered to participate in the evaluations, they were not ordered to answer the evaluator's questions.[11] Whether the evaluations involved the third type of compulsion i.e. compulsion arising from penalties for not producing incriminating evidenceis a closer question.
¶ 15 The parents contend that failing to answer questions could result "in the eventual termination of [their] constitutional right to the care and custody of [their] child." While that is true, and while termination of parental rights is a consequence of sufficient gravity to qualify as compulsion,[12] the penalty cases have generally required a showing that a penalty would follow directly and more or less automatically from the refusal to answer *778 questions.[13] Although Washington courts have not addressed the issue of compulsion in the circumstances presented here, courts in other jurisdictions have generally held that there is no compulsion absent a certain and serious penalty, such as an express threat to file a termination petition if the parent invoked the privilege.[14]
¶ 16 Here, there was no evidence that a termination petition or any other serious adverse consequence was certain, or even likely, to follow from the parents' refusal to answer questions in the evaluation.[15] Without evidence of a concrete, imminent threat, we cannot say the parents were "compelled" to respond to questions during the evaluation. But because the absence of compulsion only means that the privilege was not self-executing and that no right to counsel arose, our analysis of the decisions allowing counsel to attend the evaluations does not end here.
¶ 17 The Department also contends the parents' Fifth Amendment rights were never threatened because the immunity statute, RCW 26.44.053(2), fully protects those rights. We disagree.[16] The immunity statute provides in part:
At any time prior to or during a hearing... the court may ... order the examination of any parent ... if the court finds such an examination necessary to the proper determination of the case ... No information given at any such examination of the parent or any other person having custody of the child may be used against such person in any subsequent criminal proceeding against such person or custodian concerning the alleged abuse or neglect of the child.[[17]]
The Department contends this statute provides "use immunity," which adequately protects the parents' Fifth Amendment rights. The parents argue that the statute provides *779 insufficient immunity because its plain language "only prohibits the testimony of the person who conducts the evaluation." Both parties misinterpret the statute.
¶ 18 The parents' interpretation ignores the plain language of the statute. The statute precludes the "use" of any "information given" at a psychological evaluation in subsequent criminal proceedings. That prohibition is not limited to testimony from the evaluator. The parents argue that the statute must be narrowly construed because it conflicts with another statute requiring psychologists to report incidents of child abuse or neglect to law enforcement.[18] Relying on the rule that conflicting statutes should be harmonized so that each is given effect, the parents argue that the immunity statute must be interpreted as only prohibiting the evaluator from testifying. We are not persuaded.
¶ 19 The reporting statute is designed to secure prompt protection and/or treatment for the victims of child abuse.[19] The immunity statute, on the other hand, is designed to promote candid disclosures in dependency evaluations. The statutes conflict to the extent that one requires evaluators to report abuse to law enforcement, while the other precludes law enforcement from using that information to prosecute a parent. But any information gleaned from an evaluation can still be used to protect children through protective orders, orders for specific services, and protective dispositional decisions, such as guardianships or terminations. Furthermore, reading the statutes as the parents suggest would frustrate the purposes of both statutes. Parents would not have complete use immunity and would thus be disinclined to divulge incriminating information. Evaluators would then have no incriminating information to report. The purposes of the reporting and immunity statutes are best fulfilled by giving effect to the plain language of both.
¶ 20 The State's contention that the statute provides sufficient immunity is also unpersuasive. There are three kinds of immunity in this setting. The broadest "transactional immunity"prohibits prosecution for any matter about which the witness testified or gave a statement; i.e., the entire transaction.[20] "Use immunity" prohibits the direct use of compelled statements in a later criminal trial.[21] "Derivative use immunity" bars the use of any evidence derived from immunized statements.[22] When granted together, "derivative use" and "use" immunity provide protection that is "coextensive" with the Fifth Amendment privilege.[23] "In essence, use and derivative use immunity leave the witness, and the government, in the same situation they would have been in had the witness not given a statement or testified."[24]
¶ 21 RCW 26.45.053(2) speaks only of "use" immunity. It does not purport to provide immunity for evidence derived from immunized statements. The statute thus provides less comprehensive immunity than the Fifth Amendment.[25] The Department contends "use" immunity is nevertheless sufficient and represents a fair balancing of the competing interests involved. It cites various out-of-state authorities for the proposition that "use immunity" is sufficient to protect Fifth *780 Amendment rights. But in general, those authorities either used the words "use immunity" to refer to the combination of "use" and "derivative use" immunity,[26] or they did not consider whether derivative use immunity was required.[27]
¶ 22 The Department also cites two Washington casesState v. Decker[28] and In re the Dependency of Q.L.M.[29]for the proposition that "use" immunity is sufficient to protect Fifth Amendment rights. Neither case supports that proposition.
¶ 23 In Decker, the superior court ordered the defendant to attend a predisposition psychological evaluation without counsel. The court also entered a protective order providing that "`any discussion with [the] evaluator in reference to matters that have not been adjudicated shall be granted use immunity.'"[30] Decker argued that the order violated his Fifth Amendment privilege and his right to counsel, and that the court lacked authority to grant use immunity. This court held that while Decker had no constitutional right to counsel for the evaluation, the superior court had inherent authority to grant use immunity to protect his Fifth Amendment rights. In so holding, this court described the immunity granted by the superior court as allowing prosecution of "matters which were discovered independently of the evaluation but which also may have been discussed during the evaluation, so long as those discussions did not lead to the discovery of any evidence."[31] Thus, the immunity granted in Decker actually included both use and derivative use immunity.
¶ 24 The orders at issue in In re Dependency of Q.L.M. also granted "use immunity." Although the precise nature of that immunity was not at issue, the opinion indicates that the Q.L.M. court regarded the orders as granting both use and derivative use immunity.[32] In any case, nothing in Q.L.M. supports the Department's argument here.
¶ 25 In summary, because there was a real and substantial danger of incrimination from the parents' evaluations, and because the immunity statute does not adequately protect their Fifth Amendment rights,[33] we reject the Department's argument that the parents' Fifth Amendment rights were not threatened.

Adverse Effects on Evaluations/Prior Access to Counsel
¶ 26 The Department next argues that the courts abused their discretion because having counsel present adversely affects the evaluation and dependency processes and "will likely have a chilling effect on the Department's ability to provide this otherwise useful service to parents in the future." The Department asserts that only one psychologist was willing to conduct an evaluation of the parents with their attorneys present.
¶ 27 As a matter of policy, the Department's argument has merit. The presence of counsel might well undermine both psychological *781 evaluations and the dependency process.[34] But even so, we have held that Fifth Amendment rights generally do not yield to such considerations.[35] The Department's concerns can be alleviated in future cases without sacrificing parents' Fifth Amendment rights. The Legislature could broaden the statutory immunity to include derivative use immunity, or superior courts could issue protective orders granting derivative use immunity as they did in State v. Decker and Q.L.M.[36] Both solutions would make it unnecessary to have counsel present, thereby facilitating candid disclosures in evaluations.[37]
¶ 28 The Department also suggests that the parents' Fifth Amendment rights are adequately protected by access to counsel prior to the evaluations. We disagree. In cases where compulsion is present, prior access to counsel would clearly be inadequate. And while the case for allowing counsel to attend an evaluation is certainly less compelling in the absence of compulsion, we are not persuaded that it is an abuse of discretion to permit counsel to attend in those circumstances. "A layman may not be aware of the precise scope, the nuances, and the boundaries of his Fifth Amendment privilege[,]" and the assertion of that right "often depends upon legal advice from someone who is trained and skilled in the subject matter."[38] Given the stakes in the parents' evaluations, their incomplete immunity, and the nuances of the Fifth Amendment privilege, the courts below did not abuse their discretion in allowing counsel to attend the evaluations.

Statutory Right to Counsel at Evaluations
¶ 29 For the first time on appeal, the parents contend they had a right to counsel under RCW 13.34.090(2). That statute provides that a parent in dependency proceedings has the right to counsel "[a]t all stages" of the proceeding. The parents argue that because the evaluations were statutorily authorized, they were a "stage" of the proceedings within the meaning of RCW 13.34.090(2). We disagree.
¶ 30 A psychological evaluation is not a "proceeding" or "stage" of the proceedings. It is one of the dispositional services ordered by the court. If the evaluation were considered a "stage" of the proceedings, then parents would have a right to counsel at every counseling appointment, every visit with their children, and every other dispositional activity in a dependency case. The parents' interpretation of the statute leads to absurd results, and we reject it.[39]

*782 II.
¶ 31 The Department contends the superior court erred in sealing the mother's evaluation and prohibiting its release to anyone other than the attorneys and their clients. According to the Department, the order leaves it "hamstrung in its ability to carry out its duties unless it can share the mother's evaluation with ongoing service providers."
¶ 32 We considered a similar argument in In re Q.L.M. There, the superior court issued an injunction prohibiting release of a Sexually Aggressive Youth evaluation ordered in a dependency proceeding. DSHS and the prosecutor appealed. In reversing, we noted that, by statute, dependency records are normally made available to other participants in the juvenile justice and care systems, including the prosecutor.[40] We also noted that while protective orders may be appropriate in dependency cases to protect Fifth Amendment rights, such orders "should be narrowly tailored."[41]
¶ 33 The order sealing the mother's file in this case is not narrowly tailored because it puts the burden on the party seeking to disseminate the evaluation to demonstrate grounds for disclosure.[42] Rather, a narrowly tailored procedure would require the person being evaluated to move to prohibit or limit dissemination.[43] We therefore remand for the court to amend its order consistent with this opinion.
¶ 34 Affirmed in part and remanded in part.
WE CONCUR: APPELWICK and COLEMAN, JJ.
NOTES
[1] This court reviews orders in dependency proceedings and protective orders for abuse of discretion. In re Dependency of R.L., 123 Wash. App. 215, 98 P.3d 75 (2004) (orders in dependency cases are reviewed for abuse of discretion); King v. Olympic Pipeline Co., 104 Wash.App. 338, 348, 16 P.3d 45 (2000), review denied, 143 Wash.2d 1012, 21 P.3d 290 (2001) (decisions about protective orders are reviewed for abuse of discretion).
[2] The parents contend this appeal is moot and should therefore be dismissed. The appeal is partially moot because the evaluations have been conducted. But the argument regarding the decision to seal the mother's evaluation is not moot, and the moot portion of the appeal still qualifies for review because it involves matters of substantial public interest that are likely to recur. State v. Walker, 93 Wash.App. 382, 386, 967 P.2d 1289 (1998). We therefore deny the request to dismiss the appeal as moot.
[3] City of Seattle v. Stalsbroten, 138 Wash.2d 227, 232, 978 P.2d 1059 (1999), (quoting Schmerber v. Cal., 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)); see Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988), (a testimonial communication is one which explicitly or implicitly relates a factual assertion or discloses information.).
[4] Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).
[5] State v. Hobble, 126 Wash.2d 283, 290, 892 P.2d 85 (1995).
[6] State v. Jacobsen, 95 Wash.App. 967, 977 P.2d 1250 (1999).
[7] See United States v. McLaughlin, 126 F.3d 130, 135 (3d Cir.1997) ("While the Fifth Amendment is generally not self-executing, where a testimonial act is, as in this case, compelled, the defendant does not waive the privilege by failing to invoke it."), cert. denied, 524 U.S. 951, 118 S.Ct. 2366, 141 L.Ed.2d 735 (1998); In re Essex County Grand Jury Investigation into Fire at Seton Hall Univ. in S. Orange on Jan. 19, 2000, 368 N.J.Super. 269, 845 A.2d 739, 753 n. 9 (N.J.Super.2003) (right to counsel arises because of compulsion inherent in custodial interrogation); see State v. P.B.T., 67 Wash.App. 292, 299, 834 P.2d 1051 (1992) (juvenile who "may well feel `compelled to confess'" in predisposition interview had Fifth Amendment right to counsel), review denied, 120 Wash.2d 1021, 844 P.2d 1017 (1993).
[8] State v. Jacobsen, 95 Wash.App. at 973, 977 P.2d 1250.
[9] In re Matter of J.G.W., 433 N.W.2d 885, 886 (Minn.1989) ("[I]t is a violation of the parent's [F]ifth [A]mendment privilege to directly require the parent to admit guilt as a part of a court-ordered treatment plan.").
[10] See McKune v. Lile, 536 U.S. 24, 122 S.Ct. 2017, 2028-30, 2033, 2037-38, 153 L.Ed.2d 47 (2002) (plurality and dissenting opinions).
[11] See State v. Jacobsen, 95 Wash.App. at 972-75, 977 P.2d 1250 (fact that juvenile was ordered to attend presentence evaluation did not render it "custodial" or "compelled" so as to make Fifth Amendment privilege self-executing); United States v. Lee, 315 F.3d 206, 212-13 (3d Cir.) (polygraph condition did not violate Fifth Amendment because it did not require probationer to answer incriminating questions), cert. denied, 540 U.S. 858, 124 S.Ct. 160, 157 L.Ed.2d 106 (2003).
[12] M.L.B. v. S.L.J., 519 U.S. 102, 118-28, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (termination of parental rights implicates a parent's fundamental interest and is among the most severe forms of state action).
[13] Compare State v. Post, 118 Wash.2d 596, 611, 826 P.2d 172, 837 P.2d 599 (1992) (where inmate claimed statements to prison psychologist were compelled because he believed he would be terminated from work release if he did not cooperate, court held that "the alleged compulsion here is too conditional and not sufficiently immediate to qualify as coercive. We have not been presented with any statute or regulation which provides for revocation of work release status when a prisoner invokes the Fifth Amendment right or any testimony of Department of Corrections personnel that work release was terminated if a prisoner invoked the Fifth Amendment during a psychological interview."), with Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) (scheme under which elected official who chose to remain silent at grand jury proceedings was automatically removed from office violated privilege against self-incrimination), and Garrity v. New Jersey, 385 U.S. 493, 497-98, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (police officers' statements were "compelled" and, therefore, inadmissible against them because officers would have been terminated had they remained silent).
[14] Compare In the Matter of the Welfare of J.W., 415 N.W.2d 879, 882 (Minn.1987) (order requiring psychological evaluations, which were to include explanation of nephew's death, violated parents' Fifth Amendment rights where state's attorney threatened termination petition if parents invoked the privilege; fact that a termination petition had not yet been filed was irrelevant because "[i]t is the threat itself, not necessarily its implementation, that triggers the Fifth Amendment"), and In re A.N., 298 Mont. 237, 995 P.2d 427, 435 (2000) (treatment plan requiring parent to affirmatively explain the cause of child's injuries and cooperate with law enforcement to resolve criminal charges gave parent a "Hobson's choice of either successfully completing the requirements of [the] treatment plan, thereby incriminating himself in the criminal proceeding, or refusing to complete the treatment plan, with the substantially certain penalty of having his parental rights terminated."), with State v. P.Z., 152 N.J. 86, 703 A.2d 901 (New Jersey 1997) (no violation of Fifth Amendment rights because termination of custody was "not automatic on invocation of the privilege" and no one threatened parent with termination of parental rights if he did not confess), and In the Matter of the Welfare of S.A.V., 392 N.W.2d 260 (Minn.Ct.App.1986) (although father faced "very real possibility" of termination, there was no compulsion because he had not been threatened with sanctions for refusing to waive his privilege).
[15] The Department also argues that RCW 26.44.140 provides that the parents are not required to "admit guilt" in order to fulfill any dependency treatment requirements. But that statute applies only to abusive persons who have been removed from the home by court order. No such order has been issued in this case.
[16] Interpretation of a statute is a question of law we review de novo. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003).
[17] (Emphasis added).
[18] RCW 26.44.030.
[19] RCW 26.44.030; State v. Warner, 125 Wash.2d 876, 891, 889 P.2d 479 (1995).
[20] State v. Bryant, 146 Wash.2d 90, 98, 42 P.3d 1278 (2002).
[21] State v. Bryant, 97 Wash.App. 479, 484, 983 P.2d 1181 (1999), review denied, 140 Wash.2d 1026, 10 P.3d 406, cert. denied, 531 U.S. 1016, 121 S.Ct. 576, 148 L.Ed.2d 493 (2000).
[22] Id. at 485, 983 P.2d 1181.
[23] Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972); State v. Bryant, 97 Wash.App. at 485, 983 P.2d 1181.
[24] State v. Bryant, 97 Wash.App. at 485, 983 P.2d 1181.
[25] State v. Bryant, 97 Wash.App. at 484-85, 983 P.2d 1181; Eastham v. Arndt, 28 Wash.App. 524, 529, 624 P.2d 1159 ("The statutory grant of `use immunity' is not as comprehensive as the protection afforded by the Fifth Amendment privilege since it does not preclude the derivative use of the fruits of the compelled testimony as investigatory leads which might supply other means of incriminating the witness."), review denied, 95 Wash.2d 1028 (1981).
[26] See In re Jessica B., 207 Cal.App.3d 504, 520, 254 Cal.Rptr. 883 (1989) (speaking of "use immunities" and relying on caselaw conferring use and derivative use immunity); In re Lamonica H., 220 Cal.App.3d 634, 270 Cal.Rptr. 60 (1990) (relying on In re Jessica B., supra.); Scott Michael Solkoff, Judicial Use Immunity And The Privilege Against Self-Incrimination In Court Mandated Therapy Programs, 17 Nova L.Rev. 1441, 1486 (1993) (referring to "use immunity" as preventing the use of any testimony, "either directly or derivatively.").
[27] State v. James R., II, 188 W.Va. 44, 422 S.E.2d 521 (1992).
[28] 68 Wash.App. 246, 842 P.2d 500 (1992), review denied, 121 Wash.2d 1016, 854 P.2d 42 (1993).
[29] 105 Wash.App. 532, 20 P.3d 465 (2001).
[30] State v. Decker, 68 Wash.App. at 248, 842 P.2d 500.
[31] State v. Decker, 68 Wash.App. at 252-53, 842 P.2d 500 (emphasis added).
[32] See In re Dependency of Q.L.M., 105 Wash. App. at 543 n. 24, 20 P.3d 465.
[33] We note that the courts below appear to have been concerned that the statute did not provide transactional immunity. As discussed above, transactional immunity is not necessary to protect the parents' Fifth Amendment rights. To the extent the courts' decisions to allow counsel in the evaluations were based on the absence of transactional immunity, their decisions were based on untenable grounds.
[34] See Estelle v. Smith, 451 U.S. 454, 470 n. 14, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (indicating doubt that there is a constitutional right to counsel at a court-ordered mental examination in a criminal case and noting with approval that "[i]n fact, the Court of Appeals recognized that `an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination'") (quoting Smith v. Estelle, 602 F.2d 694, 708 (5th Cir.(Tex.)) (1979)).
[35] See, e.g., State v. Diaz-Cardona, 123 Wash. App. 477, 487, 98 P.3d 136 (2004) (The State argued that exercise of Fifth Amendment privilege at juvenile disposition hearing would "unduly restrict the information available to the juvenile court and detrimentally impact the juvenile court's ability to provide for the rehabilitation of the child." This court acknowledged the validity of the State's concerns but stated "that does not mean that the prosecuting authorities and juvenile courts should be free to acquire such information at the expense of the juvenile's Fifth Amendment rights."); State v. P.B.T., 67 Wash. App. at 300, 834 P.2d 1051 (where juvenile sought to invoke Fifth Amendment rights at a predisposition interview, this court held that "[t]he presence of counsel could have preserved appellant's right to remain silent as to the pending charge, while still leaving the opportunity to participate in the predisposition interview in a meaningful way.... We hold, therefore, that ... [the] juvenile has the right, under Miranda, to have his attorney present for the purpose not of disrupting the proceeding, but only to assist the client in preserving that client's Fifth Amendment right[.]").
[36] State v. Decker, 68 Wash.App. at 252-53, 842 P.2d 500; Q.L.M., 105 Wash.App. at 543 n. 24, 20 P.3d 465.
[37] In fact, the parents can be compelled to answer questions about J.U.'s injuries if they are given immunity for the incriminating testimony and the fruits of that testimony. Lefkowitz, 414 U.S. at 85, 94 S.Ct. 316.
[38] Maness v. Meyers, 419 U.S. 449, 466, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).
[39] State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (courts must avoid absurd results when interpreting statutes).
[40] Id. at 541, 20 P.3d 465.
[41] Q.L.M., 105 Wash.App. at 544, 20 P.3d 465.
[42] The order allows distribution of the evaluation to others "[i]f the Department or another party... set[s] a hearing before the court to request further dissemination."
[43] See Q.L.M., 105 Wash.App. at 544 n. 28, 20 P.3d 465 ("Ordinarily, the proper procedure would be to bring a motion before the trial court to prohibit or limit use of the information if and when the State tried to do so.").