FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 22, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 22, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 98094-2 |
|  | ) |  |
| A.M.-S. | ) | En Banc |
|  | ) |  |
|  | ) | Filed: October 22, 2020 |
|  | ) |  |

YU, J. — This case concerns a trial court's authority and duty to grant immunity to a parent engaging in a court-ordered evaluation in connection with a dependency proceeding. By statute, "[n]o information given" by a person during such an evaluation "may be used against such person in any subsequent criminal proceedings against such person . . . concerning the alleged abuse or neglect of the child." RCW 26.44.053(2). In this case the petitioner, father of A.M.-S.,[1] asked the trial court to go beyond the statute's requirements and prohibit not only the

---

[1] In the interest of protecting A.M.-S.'s privacy, we do not refer to their father by name in this opinion.

"use" of his statements during his court-ordered evaluation but also any "derivative use" of those statements.

The county prosecutor objected, and the trial court denied the father's motion. The Court of Appeals unanimously affirmed in a published opinion. *In re Dependency of A.M.-S.*, 11 Wn. App. 2d 416, 454 P.3d 117 (2019). We affirm the Court of Appeals. Under these circumstances, the trial court was not required to grant derivative use immunity over the prosecutor's objection.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 18, 2018, a dependency petition was filed alleging that A.M.-S.'s father had physically abused A.M.-S. On August 14, 2018, an agreed order of dependency was entered as to the father.[2] Although the father denied the allegations against him, he stipulated to a finding of dependency "given the nature of the allegations and the possibility of criminal charges." Clerk's Papers (CP) at 381. The court ordered the father to engage in a "[p]sychological evaluation with a parenting component" and reserved ruling on other possible evaluations. *Id.* at 385.

Prior to the initial review hearing, the father filed a "notice of issues," requesting "an order granting use and derivative use immunity for statements made

_____

[2] An agreed order of dependency was also entered as to A.M.-S.'s mother, but she did not participate in the proceedings at the Court of Appeals or in this court.

by the father, and information given, in the performance of services in the course of this dependency case." *Id.* at 363. The State, through the Snohomish County Prosecutor's Office, objected, contending that such an order would exceed the court's authority and was not necessary, and further noting that there was an open investigation in the prosecutor's office. Following additional briefing and argument, the trial court denied the father's motion. In its ruling, the court specifically ordered,

> Pursuant to RCW 26.44.053, no information given at any examinations of the parents (completed in association with this dependency action) may be used against the parents in subsequent criminal proceedings against the parents concerning the alleged abuse or neglect of the child. The Department shall not provide copies of the parents' evaluations to the Prosecuting Attorney, nor shall the Department discuss the evaluations/recommendations with the Prosecuting Attorney.

*Id.* at 237.

The Court of Appeals granted the father's motion for discretionary review of this interlocutory decision. While review was pending, the father completed his psychological evaluation. *A.M.-S.*, 11 Wn. App. 2d at 424. The Court of Appeals nevertheless declined to dismiss his claim as moot "because the dependency is still ongoing and additional services may be ordered for which [the father] could seek derivative use immunity" and because "this issue is one 'capable of repetition, yet evading review.'" *Id.* at 424-25 (quoting *In re Dependency of H.*, 71 Wn. App. 524, 528, 859 P.2d 1258 (1993)).

3

On the merits, the court affirmed. The court recognized that "the psychological evaluation or other parenting assessments that [the father] has undergone or may be ordered to undergo in this dependency proceeding threaten his right against self-incrimination." *Id.* at 428. Nevertheless, "trial courts do not have the inherent authority to confer derivative use immunity on a parent in a dependency proceeding over the objection of the prosecutor." *Id.* at 441. We granted the father's petition for review. 195 Wn.2d 1014 (2020).

## ISSUE

Is a trial court required to grant derivative use immunity to a parent engaging in court-ordered evaluations in a dependency case over the prosecutor's objection?

## ANALYSIS

A.     Background on the legal landscape

To provide context for the issue presented, it is first necessary to briefly review the law regarding the constitutional privilege against self-incrimination and the government's authority to nevertheless compel unwilling individuals to provide potentially incriminating information. The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." Likewise, article I, section 9 of the Washington Constitution provides, "No person shall be compelled in any criminal case to give

evidence against himself." The federal and state provisions give the same level of protection. *State v. Mendes*, 180 Wn.2d 188, 194, 322 P.3d 791 (2014).

"The right against self-incrimination is liberally construed." *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996) (citing *Hoffman v. United States,* 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)). Therefore, the right is not limited to testimony given at a trial. Instead, it "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972) (footnote omitted).

Nevertheless, "[t]he power of government to compel persons to testify in court or before grand juries and other governmental agencies is firmly established in Anglo-American jurisprudence." *Id*. Compelled testimony may be obtained pursuant to "immunity statutes," which provide that under certain circumstances, an unwilling person may be compelled to give information and testify as a witness, even though their statements could be incriminating. "The existence of these statutes reflects the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." *Id.* at 446. However, in order to lawfully compel a

person's testimony without violating the Fifth Amendment, an immunity statute must grant the person immunity that is at least "coextensive with the scope of the privilege." *Id.* at 449.

There are three types of immunity that may be granted: "transactional" immunity, "use" immunity, and "derivative use" immunity. *Id.* Transactional immunity is the broadest because it "accords full immunity from prosecution for the offense to which the compelled testimony relates." *Id.* at 453. Use immunity is much narrower, protecting "only against the use of the specific testimony compelled from" the person. *Id.* at 450. Finally, derivative use immunity prevents the government from using "any information directly or indirectly derived from such [compelled] testimony or other information." *Id.* at 453. Thus, when a person is granted derivative use immunity, the government has an "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460.

In order to compel testimony without violating the Fifth Amendment, an immunity statute must provide, at a minimum, both use and derivative use immunity. Together, use and derivative use immunity "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Id.* at 453. However, the combination of use and derivative use

immunity still "permits prosecution if the State can show the source of its evidence is wholly independent from and untainted by the fruit of the witness' testimony." *State v. Bryant*, 146 Wn.2d 90, 98, 42 P.3d 1278 (2002) (plurality opinion). By comparison, transactional immunity "affords the witness considerably broader protection than does the Fifth Amendment privilege" and is therefore not constitutionally required, even where a person is compelled to provide incriminating information. *Kastigar*, 406 U.S. at 453.

Against this background, we must consider the statute at issue here, RCW 26.44.053(2), which provides that in dependency proceedings, a court may "order the examination by a physician, psychologist, or psychiatrist, of any parent . . . if the court finds such an examination is necessary to the proper determination of the case." Clearly, statements given at such an examination might incriminate the parent and support criminal charges against them, such that the parent may invoke the Fifth Amendment and decline to answer specific questions during the evaluation. The statute accommodates this concern by providing, "No information given at any such examination . . . may be used against such person in any subsequent criminal proceedings against such person . . . concerning the alleged abuse or neglect of the child." RCW 26.44.053(2). This statute "speaks only of 'use' immunity. It does not purport to provide immunity for evidence derived from immunized statements." *In re Dependency of J.R.U.-S.*, 126 Wn. App. 786,

798, 110 P.3d 773 (2005).  Thus, the statute provides only use immunity, not derivative use or transactional immunity.[3]

The father argues that the trial court was required to go beyond the statute and grant him derivative use immunity, despite the prosecutor's objection.  In considering the father's argument, it is important to note the specific contentions he does *not* make.

First, he does not contend that derivative use immunity was required pursuant to *Kastigar*.  There is no indication that the father was prevented from invoking the Fifth Amendment in response to any specific question asked at his evaluation, and he concedes that information provided at a court-ordered evaluation in the course of a dependency proceeding is not the equivalent of compelled testimony for constitutional purposes.  Wash. Supreme Court oral argument, *In re Dependency of A.M.-S.*, No. 98094-2 (June 30, 2020), at 5 min., 19 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.  We therefore assume, without deciding, that derivative use immunity is not constitutionally required in this context.

The father also does not contend that trial courts have discretion to determine whether to grant derivative use immunity in this context on a case-by-case basis.  *Id.* at 12 min., 47 sec.  We therefore need not reach that issue.  Instead,

---

[3] No party contends that we should revisit this holding of *J.R.U.-S.*

we limit our analysis to the father's position before this court, which is that "[w]here a juvenile court finds . . . that questions asked during a court-ordered evaluation or service would pose a real and substantial danger of self-incrimination, then the court can and must grant use and derivative use immunity to the parent's statements during that evaluation or service." *Id.* at 11 min., 47 sec.

B.      Under these circumstances, courts are not required to grant derivative use immunity over a prosecutor's objections

The scope of a court's inherent authority is a question of law reviewed de novo. *In re Dependency of A.K.*, 162 Wn.2d 632, 644, 174 P.3d 11 (2007).  We affirm the Court of Appeals and hold that where derivative use immunity is not constitutionally required, the question of whether to grant such immunity is properly left to the executive and legislative branches, not the courts.  We therefore hold that the trial court was not required to grant the father's request for derivative use immunity in this case.

There is no question that legislatures have the authority to grant immunity through immunity statutes.  *Kastigar*, 406 U.S. at 446.  There is also no question that the executive branch, through its prosecuting attorneys, has the authority to grant immunity in individual cases.  *See generally Bryant*, 146 Wn.2d 90.  The question is whether the judiciary also has the authority to grant immunity in the absence of statutory authority and over the prosecutor's objections.

The father contends this question has already been decided in his favor, relying primarily on *State v. Decker*, 68 Wn. App. 246, 842 P.2d 500 (1992). However, *Decker* is distinguishable in several ways that counsel against extending it to this context.

In *Decker*, a juvenile defendant who pleaded guilty to fourth degree assault was ordered by the court to attend a psychological evaluation prior to his disposition hearing. The trial court ruled that the defendant's attorney could not attend the evaluation, but the court also granted the defendant use and derivative use immunity for any statements made during the evaluation about unadjudicated offenses. *Decker*, 68 Wn. App. at 248. The Court of Appeals affirmed, reasoning that

> the trial court was merely limiting the scope of the evaluation and attempting to fashion a means by which to protect Decker's Fifth Amendment rights. The protective order was not an attempt to interfere with the prosecutorial function. This is especially true because there were no charges pending against Decker.

*Id.* at 252. The father cites no case extending *Decker* beyond the specific facts of that case; in fact, published opinions have explicitly refused to do so. *In re Dependency of Q.L.M.*, 105 Wn. App. 532, 544, 20 P.3d 465 (2001) ("*Decker* created a single narrow exception to the normal rule that granting immunity is a prosecutorial executive function."); *State v. Diaz-Cardona*, 123 Wn. App. 477, 488-89, 98 P.3d 136 (2004) (same).

Moreover, this case is distinguishable. The prosecutor's office had a pending investigation against the father at the time the trial court denied his motion for derivative use immunity, and the dependency context presents unique concerns about whether derivative use immunity would interfere with the prosecutorial function. Where a person has been granted derivative use immunity, it is not sufficient for the government to show that its witnesses gained their knowledge from an independent source. Instead, the government must bear the "heavy burden" of showing that its witnesses were not influenced to give information based on the immunized information. *State v. Bryant,* 97 Wn. App. 479, 491, 983 P.2d 1181 (1999). As the Court of Appeals observed, in a dependency case, the same family members who are parties to the case, and therefore have access to the sealed evaluation, are likely to be key witnesses in any related child abuse prosecution. *A.M.-S.*, 11 Wn. App. 2d at 440. "So a grant of derivative use immunity would inevitably have a significant impact on a State's ability to prosecute a parent for child abuse under these circumstances," potentially preventing the State from bringing charges at all. *Id.*

Finally, we note that trial courts have authority to grant protective orders, just as the trial court here did. The court not only recognized the use immunity granted by statute but further ordered that "[t]he Department shall not provide copies of the parents' evaluations to the Prosecuting Attorney, nor shall the

Department discuss the evaluations/recommendations with the Prosecuting Attorney." CP at 237. No party has challenged this portion of the trial court's ruling, and the father does not show that it was inadequate to protect his rights or the integrity of the dependency proceedings.

CONCLUSION

It cannot be questioned that where a parent allegedly engaged in behavior that would support both dependency and criminal proceedings, the parent is presented with difficult choices. However, the legislative and executive branches are in the best position to determine the proper balance of the competing interests at stake. The father has not shown that this court should undermine those determinations, and he concedes that there is no constitutional requirement to do so. We therefore affirm the Court of Appeals and hold that trial courts are not required to grant derivative use immunity over a prosecutor's objections to parents participating in evaluations ordered pursuant to RCW 26.44.053(2).

_____
Yu, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____

_____
Owens, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

*In Matter of Dependency of A.M.-S.*

No. 98094-2

MADSEN, J. (concurring)—This case represents an intersection of two constitutionally protected rights: the dependency court wants to compel speech in a child welfare case and another arm of the government wants to use that speech for prosecution. The parties recognize that RCW 26.44.053(2) provides a parent immunity protection for answering questions during a court-ordered evaluation. Unfortunately, this case provides a poor vehicle to decide exactly what protections must be provided to a parent engaging in a court-ordered evaluation in connection with a dependency proceeding. Petitioner does not question the nature of the statutory immunity, apparently conceding that the statute provides only use immunity. The petitioner apparently also concedes that derivative use immunity is not constitutionally required to protect his right against self-incrimination. The Court of Appeals described the issue in this case as whether trial courts have the inherent authority to confer derivative use immunity to a parent in a dependency proceeding over the objection of the prosecutor. *In re Dependency of A.M.-S.*, 11 Wn. App. 2d 416, 454 P.3d 117 (2019). The majority apparently holds that courts are not required to grant derivative use immunity over a prosecutor's objections as

a matter of the court's inherent authority, but the majority also appears to hold that the

legislature has provided only "use" immunity. Majority at 8. But unlike a criminal case,

in which a prosecutor has immediate reason to give a witness immunity in order to

persuade them to testify, there is little reason for a prosecutor to grant immunity in a

dependency hearing. Against this backdrop, I am concerned that this opinion decides

important issues based on unwarranted concessions. Thus, I write separately to raise my

concerns.

The majority is correct in concluding that the question of whether to grant

derivative use immunity is properly left to the executive and legislative branches, not the

courts. Immunity is primarily a tool of the executive branch. *See generally State v.*

*Bryant*, 146 Wn.2d 90, 93, 42 P.3d 1278 (2002) (plurality opinion). Further, legislatures,

through immunity statutes, have the authority to grant such immunity. *See Kastigar v.*

*United States*, 406 U.S. 441, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972). Moreover,

petitioner cites no applicable authority suggesting that a trial court has the authority to

grant derivative use immunity.[1] Indeed, without statutory authority, a trial court is not

authorized to grant derivative use immunity over the prosecutor's objection. However, in

the absence of immunity, a court can compel speech only if it also offers protection from

---

[1] Petitioner cites *State v. Decker*, 68 Wn. App. 246, 842 P.2d 500 (1992), as authority that a court can grant derivative use immunity. *Decker* serves as a useful example of a court using its available tools to prevent infringement of the right against self-incrimination but is distinguishable from this case in several ways. In *Decker*, the court's protective order was not an attempt to interfere with the prosecutorial function, but merely to limit the scope of the evaluation and fashion a means by which to protect Decker's Fifth Amendment rights. *Id.* at 252; U.S. CONST. amend. V. Further, there were no charges pending in *Decker*. *Id.*

2

unconstitutional use of the compelled speech; the majority does not discuss tools that trial courts have to protect a parent's rights to both parent their child and avoid self-incrimination.

When a constitutional right may be violated in the course of court proceedings, it is the duty of the judiciary, when called on, to protect that right. *See State v. A.M.*, 194 Wn.2d 33, 36, 448 P.3d 35 (2019); *Missouri v. Seibert*, 542 U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004) (plurality opinion). When necessary, we have fashioned tools to protect such rights. For example, the Washington Constitution clearly recognizes an individual's right to privacy with no express limitation. CONST. art. I, § 7. To protect this right, this court held that when police officers conduct a "knock and talk" procedure to obtain consent to search a home and thereby avoid necessity of obtaining a warrant, they must inform the person from whom consent is sought that he or she may lawfully refuse to consent, can revoke consent at any time, and can limit the consent to certain areas of the home. *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998). This court did not need derivative use immunity to protect the constitutional right to privacy in one's own home; this court simply clarified that the Washington Constitution allows a person to articulate the extent of their consent to a search. *Id.* Likewise, even if RCW 26.44.053(2) does not confer derivative use immunity to protect a parent's right against self-incrimination, courts have an array of tools that they can and should use to protect this right.

No. 98094-2
Madsen, J., concurring

Because petitioner apparently concedes that information provided in a court-ordered evaluation in the course of a dependency proceeding is not the equivalent of compelled testimony for constitutional purposes, the majority assumes, without deciding, that derivative use immunity is not required in this context. Majority at 8.[2] But in the numerous cases in which the United States Supreme Court has examined compelled testimony, the real question is whether there are unconstitutional penalties for remaining silent: "the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic

_____

[2] The State contends that the legislature merely granted use immunity—not derivative use immunity—through RCW 26.44.053(2) and that the trial court was not authorized to grant such immunity to petitioner for statements made during his court-ordered examination over the prosecutor's objections. Indeed, petitioner apparently concedes that RCW 26.44.053(2) grants only use immunity and not derivative use immunity. Pet. for Review, App. at 12. However, a strong argument can be made that a plain reading of the statute, its legislative history, and statutory construction support a broader interpretation of the immunity granted by RCW 26.44.053.

The statute tells us that "[n]o *information* given at any such examination . . . may be *used against* such person in any subsequent criminal proceedings against such person or custodian concerning the alleged abuse or neglect of the child." RCW 26.44.053 (emphasis added). First, a plain reading of "[n]o information given" and "may be used against" suggests protection greater than the mere prohibition of testimony being entered into the record or the use of such examinations for impeachment. Second, the legislature conspicuously amended RCW 26.44.053(2) from "[n]o *testimony* given at any such examination" to "[n]o *information* given at any such examination." LAWS OF 1987, ch. 524, at 2448 (emphasis added). Third, it is a general rule of statutory interpretation to assume that the legislature was aware of the established common law precedent applicable to the subject matter of a statute when it was enacted. *State ex rel. Madden v. Pub. Util. Dist. No. 1 of Douglas County*, 83 Wn.2d 219, 222, 517 P.2d 585 (1973). By the time of the statute's 1987 amendment, this court made clear that the adequacy of a state grant of immunity from prosecution must be coextensive with the Fifth Amendment's privilege against self-incrimination. *State v. Carroll*, 83 Wn.2d 109, 111, 515 P.2d 1299 (1973). And if the legislature merely intended the statute to prohibit the admissibility of statements as testimony, then it knew how to do so without such broad wording as it used. *See, e.g.*, ER 403; ER 404. However, based on petitioner's concession, neither I nor the majority need to decide whether the statute provides derivative use immunity since the issue is whether courts have inherent authority to offer immunity in the absence of a statute.

4

or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Minnesota v. Murphy*, 465 U.S. 420, 434, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984) (quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 97 S. Ct. 2132, 53 L. Ed. 2d 1 (1977)); U.S. CONST. amend. V; *see also Gardner v. Broderick*, 392 U.S. 273, 88 S. Ct. 1913, 20 L. Ed. 2d 1082 (1968) (holding that a state could not fire a police officer for refusing to testify before a grand jury regarding official duties without immunity); *Lefkowitz*, 431 U.S. at 806 (invalidating a statute that disqualified any officer of political party invoking privilege against self-incrimination from future office); *Lefkowitz v. Turley*, 414 U.S. 70, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973) (holding that waiver of privilege compelled by threat of loss of public contracts was invalid).

There is no real dispute regarding the coercive nature of requiring parents to confess in court-ordered psychological examinations as a condition for maintaining child custody. Although a parent participating in a dependency examination is not under compulsion to speak, there is a real and substantial danger of incrimination during such an examination, creating a threat to that parent's Fifth Amendment rights. *In re Dependency of J.R.U.-S.*, 126 Wn. App. 786, 798-800, 110 P.3d 773 (2005). Indeed, the lower court recognized that "[s]hould [petitioner] participate in the evaluation but refuse to discuss the injuries his child sustained or his past methods of disciplining the child, he is at risk that the evaluator, the Department,[3] and ultimately the trial court could draw the

---

[3] Effective July 1, 2018, the newly created Department of Children, Youth, and Families (DCYF) took over child welfare duties that were formerly the responsibility of the Department of Social

inference that [petitioner] has committed child abuse and has parental deficiencies precluding reunification with the child." *A.M.-S.*, 11 Wn. App. 2d at 428. Further, counsel for DCYF conceded that to "decline to answer would be one piece of evidence that the evaluator would use in ultimately rendering a conclusion of the evaluation." Wash. Supreme Court oral argument, *In re Dependency of A.M.-S.*, No. 98094-2 (June 30, 2020), at 35 min., 50 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. The Department's attorney also noted that it is permissible for evaluators to make adverse inferences from a parent's exercise of his or her right to remain silent when asked a question during an examination. *Id.* at 34 min., 16 sec. Without protection from self-incrimination, a court-ordered psychological examination during a dependency hearing would present an unacceptable penalty for remaining silent. Thus, even if courts cannot grant derivative use immunity over the prosecution's objections without statutory authorization, courts can and should use other tools available to protect a parent when faced with a potential choice between self-incrimination and losing their parental rights.

When civil and criminal proceedings arising from the same transaction or conduct threaten a defendant's right against self-incrimination, courts stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice require such action. *See King v. Olympic Pipeline Co.*, 104 Wn. App. 338, 352, 16

---

and Health Services (DSHS). RCW 43.216.906. This opinion references the "Department" to mean DSHS before July 1, 2018, and DCYF after July 1, 2018.

P.3d 45 (2000); *Chaffee v. Keller Rohrback LLP*, 200 Wn. App. 66, 78, 401 P.3d 418 (2017). While there are factors in determining whether to stay a civil proceeding that we need not discuss here, delaying proceedings would be problematic in the context of a dependency hearing.

The majority holds that courts do not have the authority to grant derivative use immunity during dependency hearings. But courts do have broad discretion in granting protective orders to tailor or prohibit the dissemination or use of information when balancing competing interests. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984); *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988). A CR 26(c) or FRCP Rule 26 protective order provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in subsequent criminal prosecution; such orders may be overturned or modified based on findings of improvidence, extraordinary circumstances, or compelling need. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 742 (2d Cir. 1987); *Palmieri v. State of N.Y.*, 779 F.2d 861, 866 (2d Cir. 1985). Further, protective orders will typically not prevent a party from obtaining protected information by other means. *Seattle Times*, 467 U.S. at 33. But the parameters of such protection are similar to derivative use immunity in that if the State obtains protected information that a parent

provides during an examination through means other than the examination, then the State can still use this information.[4]

The trial court in the present case issued a protective order preventing the DSHS from "'provid[ing] copies of the parents' evaluations to the Prosecuting Attorney,'" or "'discuss[ing] the evaluations/recommendations with the Prosecuting Attorney.'" *A.M.-S.*, 11 Wn. App. 2d at 441. The order further specified that "'no information given at any examinations of the parents (completed in association with this dependency action) may be used against the parents in subsequent criminal proceedings against the parents concerning the alleged abuse or neglect of the child.'" *Id.* The trial court was correct in fashioning such an order. Further, in the event of subsequent criminal prosecution, the trial court in the subsequent criminal case should not allow evidence derived from the father's court-ordered examination to be admitted.

Parents face a Hobson's choice between candidly answering questions in a court-ordered examination or avoiding potentially incriminating statements. Even if courts lack authority to grant derivative immunity, they can, and should, fashion protective orders and tailor the evidence they admit to accomplish the goal—to protect a parent's right to both avoid self-incrimination and parent their child.

---

[4] There is limited precedent on the authority of one court to issue a binding ruling preventing another court from admitting evidence in a separate proceeding. "[T]he law in this area remains relatively undeveloped in Washington, and many questions remain unanswered." 15A DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 53.4, at 511 (2019-20 ed.). However, given the constitutional rights at stake, I believe a carefully constructed protective order could preclude the admission of such evidence into the record in a criminal proceeding.

Madsen, J.