# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LOGAN MUNOZ,<br><br>      Appellant,<br><br>   v.<br><br>WASHINGTON STATE HEALTH CARE AUTHORITY,<br><br>      Respondent. | No. 59631-8-II<br><br><br>ORDER GRANTING MOTION FOR RECONSIDERATION AND ORDER AMENDING OPINION |

Respondent moves for reconsideration of the court's July 8, 2025 opinion. Upon consideration, we grant respondent's motion and amend the opinion as follows:

On page 14, we remove the following paragraph: "And if the BOA determined that LM was eligible for more personal care hours than allowed in the September 2022 assessment, HCA might appeal that order to superior court. Under WAC 388-825-145(2), LM would continue to receive the BOA-ordered personal care hours while that appeal was pending."

On page 13, last paragraph, line 2, after "appeal that assessment" we add the following language, "to the BOA."

We do not amend any other portion of the opinion or the result. Accordingly, it is

SO ORDERED.

PANEL: Jj. Maxa, Cruser, Lee

No. 59631-8-II

FOR THE COURT:

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
LEE, J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LOGAN MUNOZ, | No. 59631-8-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE HEALTH CARE AUTHORITY, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, J. – LM is an eight-year-old child with profound cognitive and physical disabilities who requires care 24 hours per day. He appeals the dismissal as moot of his administrative appeal regarding the number of personal care and respite care hours provided to him through Community First Choice, a Medicaid plan.

In Washington, the Health Care Authority (HCA) is responsible for administering Medicaid, and HCA has an agreement with the Developmental Disabilities Administration (DDA) to administer the Community First Choice program. Community First Choice offers in-home personal care services to certain eligible disabled people living outside of an institution.

Under WAC 388-106-0125(1)(a), a child in LM's disability category qualifies for 393 personal care hours per month. However, WAC 388-106-0130(7)(a) states that services will not be provided if they are "within the range of activities that a legally responsible parent or other responsible adult would ordinarily perform on behalf of a child of the same age who does not

have a disability or chronic illness." And WAC 388-106-0130(8)(c) states, "When you are living with your legally responsible parent(s), [DDA] will presume that you have informal supports available to assist you with your ADLs [activities of daily living] and IADLs [instrumental activities of daily living] over three-fourths but not all the time." This presumption is rebuttable. WAC 388-106-0130(8)(c).

LM lived at home with his two parents and five siblings. In September 2022, DDA conducted an assessment to determine the amount of in-home personal care and respite hours to which LM was entitled under the Community First Choice program. DDA reduced the maximum allowable personal care hours because some of LM's ADLs were met by informal support provided by his parents, resulting in a determination that LM was eligible for only 216 personal care hours per month. DDA also determined that LM was eligible for 336 hours of respite care per year.

LM appealed DDA's assessment to an administrative law judge (ALJ), who scheduled a hearing for July 2023. But in May 2023, LM's parents, citing their exhaustion and need to work at their jobs, placed LM in institutional care paid for by a different Medicaid program. After a hearing, the ALJ adjusted LM's personal care hours upward to 299 and respite care hours upward to 528.

LM and HCA both appealed to HCA's Board of Appeals (BOA). The BOA determined sua sponte that because LM currently was in institutional care and would need a new assessment if he returned home, his administrative appeal of the September 2022 assessment was moot. LM filed a petition for judicial review, which the superior court transferred to this court.

On appeal, LM argues that his appeal to the BOA was not moot. He also makes several arguments regarding the merits of his appeal to the BOA.

We hold that (1) LM's appeal to the BOA was not moot because a favorable ruling from the BOA could have provided LM with partial relief and a mootness exception applies because the issue is capable of repetition but will evade review, and (2) the remedy is to remand to the BOA for a determination on the merits, and we cannot address the merits of LM's BOA appeal because our review is limited to agency orders.  Accordingly, we reverse the BOA's ruling that LM's administrative appeal was moot and remand for the BOA to address LM's appeal on the merits.[1]

FACTS

*Background*

LM currently is eight years old, and he was five years old at the time of the September 2022 assessment.  LM has cerebral palsy, epileptic encephalopathy, failure to thrive, hearing loss in both ears, and developmental delays, and is fed exclusively through a feeding tube.  He has seizures between 30 and 50 times a day.  He is immobile and cannot communicate with others.

These conditions require constant support and supervision.  LM's seizures require immediate intervention.  Because LM cannot move and is confined to a wheelchair or bed, someone must reposition him at least every two hours.  LM's mother stated that she sometimes has to reposition him every half hour because LM will squirm in his wheelchair or bed.  Because LM is fed through a feeding tube, someone must also suction his mouth and throat to prevent him from aspirating on his food.  Someone must change his diaper every two hours.  LM's

---

[1] LM also argues that the BOA's determination of mootness violates Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134.  Because we hold that LM's BOA appeal is not moot, we do not address this argument.

healthcare provider specifically stated that LM requires "full time 24 hour care" and that he "is unable to perform any [activity of daily life] without assistance." Admin. Rec. (AR) at 742.

LM's family built an ADA-compliant bed on the ground floor of their home. LM sleeps around two hours at a time. His mother and father alternated sleeping with him. They must monitor him while he sleeps to ensure that he is breathing and not aspirating.

Before May 2023, LM lived at home with his parents and five siblings between the ages of 2 and 19. Both of his parents work full time, and at the relevant time of HCA's determination of LM's care hours his father had moved to Seattle for several months to train to be a sheriff's deputy.[2]

*Community First Choice Program and CARE Assessments*

HCA administers the Community First Choice program with the assistance of DDA. WAC 388-106-0270. Through Community First Choice, a person can receive personal care services, which means assistance with activities of daily living (ADL) and instrumental activities of daily living (IADL). WAC 388-106-0270; WAC 388-106-0010 (defining "personal care services"). To determine the amount of personal care services to which a person is entitled, DDA uses an assessment tool called the comprehensive assessment reporting evaluation (CARE). WAC 388-106-0065, 0070. DDA uses information from clients, caregivers, and family members to determine how a client performs personal care tasks, taking into account developmental milestones for children. WAC 388-106-0075.

A CARE assessment analyzes self-performance by assessing ADLs and IADLs. WAC 388-106-0075. ADLs include bathing, bed mobility, eating, locomotion in a room and outside a

---

[2] LM's father stated that after his training, he was let go from a police department job because his sleep deprivation caused him to be unable to make decisions quickly enough. LM's father attributed this sleep deprivation to the near constant care of LM.

room, ability to walk, medication management, toilet use, transfer between surfaces, and personal hygiene. WAC 388-106-0010. IADLs include meal preparation, ordinary housework, essential shopping, and travel to medical services. WAC 388-106-0010. The CARE assessment evaluates a person's self-performance based on which ADLs a person actually performed in the previous seven days and what IADLs a person actually performed in the previous 30 days. WAC 388-106-0010.

The CARE assessment analyzes a number of factors to place a person in one of 17 in-home groups. WAC 388-106-0085, -0125. If a person meets the criteria for exceptional care, they are placed in group E. The E High category entitles a person to 393 base hours per month of in-home care. WAC 388-106-0125(1). However, the base hours can be adjusted for informal supports and age-appropriate functioning. WAC 388-106-0130(2)(a).

DDA "presumes that children have legally responsible or other responsible adults who provide informal support for the child's ADLs, IADLs, and other needs." WAC 388-106-0130(7)(a). DDA does "not provide services or supports that are within the range of activities that a legally responsible parent or other responsible adult would ordinarily perform on behalf of a child of the same age who does not have a disability or chronic illness." WAC 388-106-0130(7)(a).

WAC 388-106-0130(8)(c) states, "When you are living with your legally responsible parent(s), [DDA] will presume that you have informal supports available to assist you with your ADLs and IADLs over three-fourths but not all the time." A parent or other legal responsible parent can rebut the presumption by "providing specific information during your [CARE] assessment to indicate why [the child does] not have informal supports available at least three-fourths of time." WAC 388-106-0130(8)(c). When DDA determines that a client has overcome

7

the rebuttable presumption, the agency will "score down" how often an ADL is met in the one-quarter increments described above.

DDA takes the number of base hours for a child's classification, then subtracts the amount of informal support available to determine the total number of personal care hours available. WAC 388-106-0130(1), (2).

*September 2022 CARE Assessment*

As of February 2022, LM apparently received a 244 personal care hours per month and 240 respite care hours per year through the Community First Choice program. In February 2022, LM's mother contacted DDA asking for an increase in his number of care hours per month. LM's mother told DDA that she needed 590 hours of care per month because LM's father was going to police training, she had a full time job, and she had other children to provide for. She stated that if LM did not receive 590 hours, "we will need to know the next process in how we get him into a home." AR at 418.

DDA performed a CARE assessment regarding LM in September 2022. DDA determined that LM's classification group was E High.

The CARE assessment determined LM's informal supports and age appropriate development for ADLs. DDA determined that several of LM's ADLs were "partially met" by informal supports. Those categories were:

- Bed Mobility: partially met, over 1/2 to 3/4 of the time;
- Eating: partially met, over 1/2 to 3/4 of the time;
- Toilet Use: partially met, over 1/2 to 3/4 of the time;
- Dressing: partially met, over 1/2 to 3/4 of the time;
- Personal Hygiene: partially met, over 3/4 but not all the time;
- Bathing: partially met, 1/4 to 1/2 of the time.

DDA also determined that several other ADLs were unmet. Three out of four IADLs also were identified as outside the age-appropriate range.

As noted above, people in the E High group are entitled to receive 393 base hours of personal care before factoring in informal supports and age. WAC 388-106-0125(1)(a). DDA's planned action notice determined that after factoring age appropriate functioning and informal supports, LM was eligible for 216 personal care hours per month and 336 hours of respite care per year.

DDA also determined that LM's respite assessment level was a 3. A respite assessment level assesses a caregiver's level of stress and how much supervision a client needs and provides an annual level of personal care hours coverage. A respite assessment level of 3 receives 336 respite hours per year.

*Administrative Appeals*

LM appealed the determination of personal care and respite hours to the Office of Administrative Hearings. LM's appeal before the ALJ was scheduled for July 12, 2023.

On May 8, 2023, LM's parents placed him into an institution paid for by the State through Medicaid. But his parents stated that if they had "sufficient support," they would like to have LM at home with his family. RP at 200. LM's mother stated that having him leave home was their "last option." RP at 199. Medicaid pays $33,000 per month for LM's institutional care.

The administrative hearing focused on the way in which DDA calculated the availability of informal supports for LM's ADLs. Multiple DDA representatives testified that there is a rebuttable presumption that a child's parents will provide them with informal support for personal care needs more than three quarters of the time as required by regulation.

In his closing statement, LM framed the issues as follows:

> 1. Whether DDA improperly applied its own rules in applying the informal supports rule and reducing the amount of care hours the appellant receives per month.

9

2. Whether DDA improperly assessed the levels of support required by the appellant thereby reducing the amount of respite hours his primary caregiver receives.

AR at 154-55.

The ALJ issued a lengthy Initial Order. The ALJ found that for bed mobility, LM's needs were met by informal support only 1/4 of the time, a decrease from the CARE assessment. The ALJ also decreased the parental presumption from the CARE assessment in the following areas: transfers, eating, toilet use, dressing, bathing, meal preparation, housework, essential shopping, and medication management.[3] These findings increased LM's personal care hours to 299 hours per month. The ALJ also found that LM's respite care level was 5, which entitled him to 528 respite hours per year.

*HCA Board of Appeals*

Both LM and HCA appealed the ALJ's adjustment of hours to HCA's BOA. LM argued that the ALJ misapplied the presumption of informal support and should receive more personal care hours based on being in the E High group. HCA appealed the ALJ's determination of LM's respite level of 5.

The BOA issued a Final Order, ruling sua sponte that the matter was moot. The BOA noted that LM had been "placed in a different care setting that does not use [Community First Choice] benefits." As a result, "the September 2022 award of [Community First Choice] benefits had been superseded by care in a facility." AR at 36. The BOA stated, "[LM] is no longer receiving [Community First Choice] benefits. Consequently, the DDA action does not

---

[3] The amount that the ALJ reduced the presumption of informal support needs varied by category. For example, medication management was reduced from being age appropriate to being partially met 1/4 to 1/2 of the time, while transportation was reduced from being partially met 3/4 of the time (the rebuttable presumption) to entirely unmet.

confer or deny any benefits to [LM]. If the family does choose to bring [LM] home to care for him, the amount of his benefits will be determined by a new assessment, not the September 2022 assessment." AR at 36. Accordingly, the BOA determined that it could not grant relief on the September 2022 CARE assessment and dismissed the appeal.

LM filed a request for reconsideration. LM argued that BOA could provide effective relief because if the BOA issued an order stating that he was entitled to more personal care hours, then (1) if the new assessment found the he was entitled to less hours than the BOA's order, he could appeal that assessment while receiving the BOA-ordered benefits; and (2) any new assessment would be performed with the knowledge of BOA's order. LM also argued that the case met the mootness exception of capable of repetition yet evading review.

The BOA denied LM's request for reconsideration. The BOA stated that "[a]ll the relief sought is rendered moot by institutional care" and that "an advisory opinion here would be worthless because future in-home care would be based on a new assessment, not the assessment previously before the tribunal." AR at 1. The BOA concluded, "If the family decides once again to care for [LM] in his home, at that time [DDA] will take action to assess how many in-home care hours and how many respite care hours to grant. The number of hours will not be based on the September 2022 assessment, which is already over a year old." AR at 1.

LM filed a petition for review in Thurston County Superior Court. The superior court transferred the petition for review to this court under RCW 34.05.518(1)(b)(i).

ANALYSIS

A.     STANDARD OF REVIEW

Our review of an agency decision is governed by the Administrative Procedure Act (APA). RCW 34.05.570(3). In reviewing a claim under the APA, we review the agency's order

11

based on the administrative record. *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 501, 471 P.3d 934 (2020).

We can grant relief from an agency's order in adjudicative proceedings based on one of the nine reasons listed in RCW 34.05.570(3), including that the order is (1) outside the statutory authority or jurisdiction of the agency as conferred to it by law, (2) the product of unlawful procedure or decision-making process, (3) based on an erroneous interpretation or application of the law, or (4) arbitrary and capricious. RCW 34.05.570(3)(b), (c), (d), (i). The party challenging the agency action bears the burden of demonstrating that the action was invalid. RCW 34.05.570(1)(a); *Pac. Coast Shredding*, 14 Wn. App. 2d at 501.

We review de novo questions of law, statutory construction, and an agency's application of the law. *Puget Soundkeeper Alliance v. Dep't of Ecology*, 191 Wn.2d 631, 637, 424 P.3d 1173 (2018).

B.    MOOTNESS OF APPEAL

HCA argues that LM's appeal to the BOA was moot because LM now has been placed outside the home, and any determination of personal care hours if he returned home would require a new CARE assessment. Therefore, the 2022 CARE assessment that LM challenged in the BOA no longer makes any difference. LM argues that (1) this appeal is not moot because if the BOA granted the requested relief, LM could be returned home with sufficient personal care hours pending a new CARE assessment and a favorable BOA decision could affect how DDA would perform any new assessment; and (2) an exception to the mootness doctrine applies because the issue is capable of repetition but will evade review any time a DDA client is forced into an institution because of inadequate personal care hours. We agree with LM.

1.  Legal Principles

An appeal is moot if this court can no longer provide effective relief. *Gonzales v. Inslee*, 2 Wn.3d 280, 289-90, 535 P.3d 864 (2023). No Washington case has discussed in detail the meaning of "effective" relief. But the Supreme Court has held that not considering moot cases "avoid[s] the danger of an erroneous decision caused by the failure of parties, who no longer have existing interest in the outcome of a case, to zealously advocate their position." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

The United States Supreme Court has stated that " '[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.' " *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012)). In addition, "even the availability of a 'partial remedy' is 'sufficient to prevent [a] case from being moot.' " *Chafin*, 568 U.S. at 177 (alterations in original) (quoting *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 135 L. Ed. 2d 453 (1996)).

Even if a case is moot, we can review a moot issue that involves matters of continuing and substantial public interest. *Gonzales,* 2 Wn.3d at 289. Four factors determine whether we will address a moot appeal: "(1) whether the case is a matter of public concern or simply a private dispute, (2) the need for an authoritative determination to guide public officials in the future, (3) the likelihood of reoccurrence, and (4) the quality of the advocacy." *Id.*

Under federal law, an exception to mootness exists if an appeal is capable of repetition but evades review. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982). Our Supreme Court has not formally adopted this "capable of repetition, yet evading review" exception. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 451, 759 P.2d 1206

13

(1988). However, the Supreme Court acknowledged application of this exception by the Court of Appeals in *In re Dependency of A.M.-S.*, 196 Wn.2d 439, 444, 474 P.3d 560 (2020).

In addition, under the public interest exception, we can consider " 'the likelihood that the issue will escape review because the facts of the controversy are short-lived.' " *Eyman v. Ferguson*, 7 Wn. App. 2d 312, 321, 433 P.3d 863 (2019) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994)); *see also Love Overwhelming v. City of Longview*, 32 Wn. App. 2d 346, 352, 556 P.3d 692 (2024) (considering a moot issue under the public interest exception because "there is the possibility that this issue would likely continue to evade review").

Mootness is a question of law that we review de novo. *AURC III, LLC v. Point Ruston Phase II, LLC*, 3 Wn.3d 80, 86, 546 P.3d 385 (2024).

2. Mootness Analysis

a. Ability to Provide Relief

HCA argues that LM's appeal to the BOA was moot because he now lives in an institution, and if he returns home the number of personal care hours would be determined based on a new assessment, not the September 2022 assessment. Because LM now is in institutional care, he no longer receives the Community First Choice personal care and respite benefits outlined in the September 2022 CARE assessment (as modified by the ALJ's order). Therefore, HCA argues that even if the BOA ruled that the September 2022 assessment was incorrect, that ruling would be meaningless as long as LM remains in an institution.

HCA emphasizes that if LM's family decided it wanted to remove LM from the institution and return him home, they would have to request Community First Choice personal care benefits at that time. This request would require a new CARE assessment based on his

current condition.[4]  *See* WAC 388-106-0070 ("You will be assessed in CARE if you are applying for . . . [Community First Choice]."); *see also* WAC 388-106-0050(1) (DDA "will assess you at least every twelve months").  Therefore, HCA argues that even if the BOA ruled that the September 2022 assessment was incorrect, that ruling would be meaningless because the new assessment – not the 2022 assessment – would determine the amount of LM's personal care benefits.

However, LM argues that his appeal to the BOA was not moot because a BOA decision on his challenge to the September 2022 assessment could provide him with at least partial relief if the BOA determined that he was eligible for more personal care hours than allowed in the September 2022 assessment.  LM emphasizes that effective relief can exist even if the exact relief the plaintiff seeks is not available.

First, if the BOA decision resulted in eligibility for an increased amount of personal care hours in an amount that would allow LM to return home, DDA would be required to implement that decision pending the completion of the new assessment.  Depending on how long it would take for DDA to complete the new assessment, LM would be able to live at home with the increased personal care hours for some period of time.

Further, if the new assessment subsequently resulted in lower hours than a favorable BOA decision, LM could appeal that assessment and continue receiving the increased personal care hours allowed in a favorable BOA decision while the appeal was pending.  For this proposition, LM relies on WAC 388-825-145(2):

> If you request an administrative hearing regarding the [DDA's] decision to reduce or terminate your services, and you request the hearing before the date specified on the notice of the action, and none of the conditions in WAC 388-825-150 applies, [DDA] will not reduce or terminate those services unless and until an administrative

---

[4] HCA states that this assessment could occur at the institution in which LM currently lives.

law judge issues an initial order or a review judge issues a final order that reduces or terminates those services.

Under this provision, DDA could not implement the personal care hours allowed in the new assessment – if lower than those allowed in the BOA's decision – while LM's appeal of the new assessment was pending.

And if the BOA determined that LM was eligible for more personal care hours than allowed in the September 2022 assessment, HCA might appeal that order to superior court. Under WAC 388-825-145(2), LM would continue to receive the BOA-ordered personal care hours while that appeal was pending.

Second, if the BOA ruled that the September 2022 assessment was erroneous and allowed more personal care hours, DDA presumably would take the BOA's reasoning into account when performing the new assessment. This could result in DDA allowing more personal hours in the new assessment than it would have without a BOA decision favoring LM.

We agree with LM. LM's appeal with the BOA could not result in the complete relief he seeks – increased personal care hours indefinitely – because a new assessment must be performed. But he still could obtain partial relief: an increase in personal care hours sufficient to allow a temporary return to home care pending the new assessment and any appeals and a BOA opinion that could affect how DDA would perform any new assessment. This constitutes "effective" relief that avoids mootness.

Accordingly, we hold that LM's appeal to the BOA was not moot, and therefore that the BOA erred in dismissing his appeal.

b. Issue Evading Review

LM argues that even if his appeal to the BOA was moot, an exception to mootness applies because the issue is capable of repetition yet will evade review if the appeal is dismissed as moot. We agree.

As discussed above, the Supreme Court had not formally adopted the capable of repetition yet evading review exception. *Hart*, 111 Wn.2d at 451. But courts have applied a similar exception under the public interest exception to mootness. *See Eyman*, 7 Wn. App. 2d at 321; *see also A.M.-S.*, 196 Wn.2d at 444 (acknowledging application of this exception by the Court of Appeals). We apply this mootness exception.

Here, DDA's application of WACs to determine the amount of personal care hours is capable of repetition regarding LM himself because whenever LM is reassessed, DDA will continue to apply the WACs in the same manner. Whether DDA's application is proper will evade review because if LM returns home and then is again forced into an institution, any appeal will be moot because of the need for another new assessment. And even if LM had remained at home, his appeal would have been moot because a new assessment must be performed every year.

In addition, the issue is capable of repetition yet evading review for all profoundly disabled persons in a similar situation as LM. If DDA's determination of personal care hours forces such a person into an institution, any appeal always will be moot because a new assessment will be required for the person to return home. And if a person remained at home, any appeal would always be moot because a new assessment must be performed every year. Therefore, a person in LM's situation could never obtain review of DDA's determination of personal care hours. This scenario would satisfy the public interest exception to mootness.

We hold that even if LM's appeal to the BOA was moot, a mootness exception applies because the issue presented was capable of repetition but would evade review.

2. Remedy

HCA argues that if LM's appeal to the BOA was not moot, we should remand to the BOA to issue a final order on the merits.[5] We agree.

In his briefing, LM addresses the merits of his challenge to DDA's September 2022 personal care determination. He argues that (1) HCA's rule for determining the amount of informal support available violates Medicaid's Early and Periodic Screening, Diagnosis, and Treatment Program requirements; (2) as applied to LM, HCA's rule for determining informal support violates Medicaid's comparability requirement; (3) HCA was arbitrary and capricious in determining LM's personal care and respite hours; and (4) DDA failed to look forward to assess the future ability of informal supports to provide care. LM argues that we should address the merits of his challenge to the September 2022 assessment in this appeal.

However, the APA limits our review to agency orders. The only agency order on appeal is the BOA's determination that LM's appeal was moot. BOA's order did not address the merits of LM's appeal. Therefore, the merits are not properly before us.

We remand to the BOA to issue a final order on the merits of LM's appeal.

C.   ATTORNEY FEES ON APPEAL

LM requests his reasonable attorney fees under RAP 18.1 and RCW 4.84.360(1). RCW 4.84.350(1) permits a court to award attorney fees to "a qualified party that prevails in a judicial review of an agency action . . . unless the court finds that the agency action was substantially justified or that circumstances make an award unjust." A qualified party prevails if they

---

[5] LM does not address this issue in his reply brief.

"obtained relief on a significant issue that achieves some benefit that the qualified party sought." RCW 4.84.350(1).

Here, LM is prevailing party on appeal. However, we conclude that BOA's ruling dismissing LM's appeal as moot was substantially justified. It was not unreasonable for the BOA to dismiss the appeal of the September 2022 assessment as moot when a new assessment would be required if LM returned home. Therefore, we decline to award attorney fees to LM.

CONCLUSION

We reverse the BOA's ruling that LM's appeal was moot and remand for the BOA to address LM's appeal on the merits.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
CRUSER, C.J.

_____
LEE, J.