IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Parental Rights to<br><br>K.C.W. and G.C.W. | No. 86483-1-I (consolidated with No. 86484-0-I)<br><br>ORDER GRANTING MOTION TO PUBLISH |

Respondent Department of Children, Youth and Families moves to publish the opinion filed on June 16, 2025. Appellant P.N. filed an answer. A panel of the court has reconsidered its prior determination not to publish the opinion for the above entitled matter, and has found that it is of precedential value and should be published.

Now, therefore it is hereby

ORDERED that the written opinion, filed on June 16, 2025, shall be published and printed in the Washington Appellate Reports.

For the Court:

_____
Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parental Rights to<br><br>K.C.W. and G.C.W. | No. 86483-1-I (consolidated with No. 86484-0-I)<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

SMITH, J. — In August 2021, P.N. was arrested for attempting to kill one of her children and threatening to kill her other child. The Department of Children Youth and Family petitioned for dependency of the children based on the events that resulted in those charges. The Department subsequently petitioned for termination of parental rights, and P.N. moved to continue the trial to protect against waiving her Fifth Amendment rights before her criminal case was heard. The court agreed and continued the case. When P.N. requested a third continuance, the court denied her request, citing the children's need for permanency and timely resolution. P.N. renewed the motion at the start of trial, which was denied. P.N. did not testify at trial and the court terminated her rights. P.N. appealed.

Because the court did not abuse its discretion when it denied P.N.'s motion to continue the termination trial, we affirm.

FACTS

P.N. is the mother to K.C.W. and G.C.W.  In August 2021, the State charged P.N. with attempted murder in the first degree and felony harassment after she purportedly threatened K.C.W. and tried to hang G.C.W. off the apartment balcony.  The day before P.N. was formally charged in the criminal matter, the Department petitioned for dependency because the children's father was deceased and the children did not have a parent to reside with.  The children were placed in foster care, but later moved to relative care with their half-sister, Feng "Vivian" Woo in January 2022.  P.N. has remained in custody since the incident in August 2021.

P.N. was deemed incompetent to stand trial in the criminal proceeding and admitted to Western State Hospital for restoration.  In February 2022, while P.N. was at Western State, the court entered orders of dependency following a trial. The court found dependency under RCW 13.34.030(6) because the children were "abused or neglected" and had "no parent, guardian or custodian capable of adequately caring for the children."  The dispositional order required P.N. to participate in a psychological evaluation with a parenting component.  P.N. declined to participate in the evaluation because of the ongoing criminal investigation.  P.N. otherwise fully complied with treatment, but concern remained about P.N.'s ability to maintain medication management.

In both the criminal and dependency cases, the court entered orders prohibiting contact between P.N. and her children.  The court modified the criminal order two weeks before the termination trial, allowing the children

supervised visitation with their mother if requested. Neither child requested visitation during this time. Other than once in 2022, the children never requested contact with P.N.

In March 2023, more than one year after the dependency trial, the Department moved for termination of P.N.'s parental rights. The trial was set for August 2023. In July, P.N. moved for a continuance under *King v. Olympic Pipeline Company,* 104 Wn. App. 338, 16 P.3d 45 (2000), pending the resolution of her criminal case. P.N. was concerned she would not be able to address the Department's allegations without waiving her Fifth Amendment rights in the criminal proceeding.

The court granted a four-month continuance and set a new trial date for November 2023. In its order granting the continuance, the court noted P.N.'s "strong interests in her Fifth Amendment rights."[1] But, the court also recognized the "children's strong interests in resolution and achievement of permanency" and emphasized it did not find a basis for an indefinite stay. The court stated, "To the extent that resolution of the criminal case will not be achieved by November 2023, the Department's and children's interests in resolution and permanency outweigh the mother's interests."

In November, P.N. moved for a second continuance, as her criminal case was still pending. P.N. again relied on *Olympic Pipeline,* and stated she had three of her five attorneys abruptly leave the office, resulting in further delay of

---

[1] Both children expressed interest in permanency and in being adopted by their caregiver.

her criminal trial, which was now set for January 2024. Noting the change in counsel was "through no fault of her own," and the circumstances "may create an issue for appeal" which would compromise the children's desire for a final resolution, the court struck the November trial date and granted a second continuance.[2] The court did not set a new trial date, but instead continued the motion to December 2023. At the December hearing, the court hard set a trial date of April 2024, and scheduled a status conference for March 2024.

At the March status conference, P.N. moved for a third continuance, contending the *Olympic Pipeline* factors still weighed in favor of continuing the termination trial until after the criminal case concluded. This time the court denied the motion, finding uncertainty as to when the criminal trial would proceed, and the children's interest in permanency now outweighed P.N.'s interests.[3] The court noted that, although the analysis of the *Olympic Pipeline* factors remained the same as they were in August, "the interests of [the Department] and the children in having the case move forward and in permanency are even more compelling than they were in August." The court concluded the children had been out of the home for approximately 30 months and their right to a speedy resolution of the termination proceeding outweighed P.N.'s interests.[4]

---

[2] Counsel for the children again expressed the youths' desire for a final resolution.

[3] The children took no position on the motion this time.

[4] The children did not take a position on P.N.'s third motion for a continuance but had opposed an indefinite stay of the termination case during the first two continuances.

At the beginning of the termination trial in April 2024, P.N. renewed her motion to continue the trial for a fourth time. In the alternative, she requested a partial stay, whereby the Department would present its case and then the court would take an extended recess until the criminal trial concluded. The court denied P.N.'s motion in full, noting, "The children's interest in permanency outweigh the mother's interest." P.N. did not testify at trial or present any evidence. After trial, the court entered a final order terminating P.N.'s parental rights to both children. P.N. appeals based only on the denial of her motion to continue or stay the trial.

ANALYSIS

P.N. claims the trial court abused its discretion by declining to continue the termination trial based on her pending criminal trial. The Department contends the trial court analyzed the *Olympic Pipeline* factors and was within its discretion in denying a continuance. Because the court properly considered all the factors under *Olympic Pipeline*, we agree with the Department.

We review a trial court's determination on a motion to stay a proceeding for an abuse of discretion. *Olympic Pipeline*, 104 Wn. App. at 348. "A trial court abuses its discretion only if its ruling is manifestly unreasonable or is based upon untenable grounds or reasons." *Olympic Pipeline*, 104 Wn. App. at 348. The mere pendency of parallel civil and criminal proceedings does not guarantee the defendant a stay of the civil case. *Olympic Pipeline*, 104 Wn. App. at 352.

When deciding whether to stay a civil proceeding to protect a party's Fifth Amendment rights in a parallel criminal proceeding, the court weighs eight

factors, (1) the extent to which a defendant's Fifth Amendment rights are implicated, (2) the similarities between the civil and criminal cases, (3) the status of the criminal case, (4) the interests of the plaintiffs in proceeding expeditiously and the potential prejudice to plaintiffs of delay, (5) the burden that any particular aspect of the proceeding may impose on the defendants, (6) the convenience of the court in the management of its cases and the efficient use of judicial resources, (7) the interests of persons not parties to the civil litigation, and (8) the interest of the public in the pending civil and criminal litigation. *Olympic Pipeline*, 104 Wn. App. at 352-53. No one factor is determinative: "The balancing must be conducted on a case by case basis 'in light of the particular circumstances and competing interests involved in the case.' " *Olympic Pipeline*, 104 Wn. App. at 353 (quoting *Fed. Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

In a termination proceeding, the child's welfare is the court's primary consideration. *In re Dependency of M.H.P.*, 184 Wn.2d 741, 762, 364 P.3d 94 (2015).

> [T]he child has a strong interest in the speedy resolution of dependency and termination proceedings, *see* RCW 13.34.020, and the State has an interest in ensuring such a speedy resolution to ensure that children do not remain in legal limbo—with the mental and emotion strain that entails—for any longer than is necessary.

*M.H.P.*, 184 Wn.2d at 762. When the welfare of a child conflicts with the parent's rights, " 'the welfare of the minor children must prevail.' " *M.H.P.*,

184 Wn.2d at 762 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973)).

Here, P.N. claims the court erred in balancing the *Olympic Pipeline* factors and incorrectly denied her motion based on the children's need for permanency. But, the court weighed all eight factors and determined the interests of the children outweighed P.N.'s interest in her Fifth Amendment rights.[5]

1. Factor 1

P.N. contends the termination trial significantly impacted her Fifth Amendment rights. The Department acknowledges P.N.'s Fifth Amendment rights were implicated, but contends the court gave this factor proper weight. We agree with the Department.

The extent to which a party's Fifth Amendment rights are impacted "must be given 'serious consideration' in the balancing of interest." *Olympic Pipeline,* 104 Wn. App. at 353 (quoting *White v. Mapco Gas Prods., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987)). But, this factor is only one consideration that must be weighed against the other seven factors. *Olympic Pipeline,* 104 Wn. App. at 353.

Here, P.N. emphasizes the dilemma she faced by having to choose between testifying at the termination trial and risking evidence being used against her in the criminal proceeding, and exercising her Fifth Amendment rights and having the court draw an adverse inference from her refusal to testify. P.N. also

---

[5] In its order, the court adopted and incorporated the previous *Olympic Pipeline* analyses from August 2023 and March 2024.

claims that, given this dilemma, she was unable to engage in pre-trial services, such as the psychological evaluation with a parenting component.

The Department recognizes the dilemma P.N. faced, but contends her rights do not always outweigh the interests of the children.  The Department also maintains P.N. had other options available to her that would have allowed her to participate in the psychological evaluation, such as moving for immunity.  This oversimplifies the issue.  Only "use immunity" is available under such contexts, which would not protect P.N. from the State using evidence derived from her immunized statements.  *See In re Dependency of A.M.-S.*, 196 Wn.2d 439, 447, 474 P.3d 560 (2020).  But, while immunity may not have been a reasonable alternative, other options were available to P.N.

P.N. might not have been able to participate in the termination trial to the degree she desired, but the court noted in its order that P.N. "is not precluded from participating in the termination trial, or even from testifying on some issues if she chooses. . . . To the extent that she chooses to invoke her Fifth Amendment rights and not answer some questions, the trial court is permitted, but not required, to draw a negative inference."

The court did not discount the importance of P.N.'s Fifth Amendment rights, as P.N. implies.  In its order, the court explicitly noted, "The Department's assertion that the mother's Fifth Amendment rights are not implicated because the Department has stricken the mother from its witness list is unpersuasive."  The court found P.N.'s Fifth Amendment rights so important that it stayed the termination trial twice.  But the court noted in its earlier orders that the pendency

of the criminal case would not be a basis for further continuances unless the trial was underway or there was a firm date set. Upon P.N.'s third request for a continuance, with no guarantee the criminal trial would proceed on schedule, the court weighed all the factors and determined P.N.'s Fifth Amendment rights no longer outweighed the interests of the children to have permanency.

Accordingly, we agree with the Department that the trial court did not discount P.N.'s Fifth Amendment rights, they were simply outweighed because of the passage of time.

2. Factor 2

P.N. contends the second factor strongly supported her request for a continuance. Again, the Department does not disagree this factor was significant, but asserts the court properly weighed the factor against the children's interests. We agree the court appropriately analyzed this factor.

The similarity between the criminal and civil issues is "one of the most important factors in the balancing process." *Olympic Pipeline,* 104 Wn. App. at 357. A stay is most appropriate when the subject matter of the parallel civil and criminal cases is the same. *Olympic Pipeline,* 104 Wn. App. at 357. But, even when considerable overlap exists, the court is still within its discretion to deny a continuance. *See Olympic Pipeline,* 104 Wn. App. at 352.

Here, the court recognized the significant overlap between the criminal and civil matters. In its order, the court stated, "Although there are other allegations supporting the finding of dependency and the Department's petition for termination of parental rights, the allegations that the mother threated the

9

children and attempted to kill [G.C.W.] are central to the petition to terminate and the basis for the criminal case." But, despite the overlap, the court held the interests of the children in permanency outweighed P.N.'s rights.

Because the court considered this factor and balanced it fairly against the other factors, we conclude it did not abuse its discretion.

3. <u>Factor 3</u>

P.N. next contends the third factor weighed in favor of a continuance because the criminal case had already begun. The Department agrees this factor initially weighed in favor of a continuance, but now claims it no longer supports a stay. Because the passage of time impacts the weight of this factor, we agree with the Department.

Once charges have been filed, there is a stronger argument for staying the civil proceeding because "the non-criminal proceeding might undermine the party's Fifth Amendment privilege against self-incrimination." *Olympic Pipeline,* 104 Wn. App. at 358. But the status of the criminal case also includes "the likely speed of its resolution." *Olympic Pipeline,* 104 Wn. App. at 359.

Originally, this factor did weigh in favor of a stay, because criminal charges had already been filed against P.N., and the termination proceeding would force P.N. "to choose between remaining silent in order to preserve her Fifth Amendment rights and testifying in [the termination proceeding] regarding the incident in question as it relates to her fitness and whether her parental rights should be terminated." But, as the criminal trial kept getting pushed to a later date and neither party had additional information concerning a realistic trial date,

the court concluded the interests of the children in "achieving permanency planning goals at the earliest possible date" outweighed continuing the termination proceeding until the criminal case concluded. The court also noted that even if the trial were to go forward on its scheduled date, "there would be further opportunity for [P.N.] to invoke her Fifth Amendment rights pending sentencing and any appeals," further delaying the termination proceeding.

The court did not abuse its discretion when it found uncertainty concerning the commencement of the criminal trial weighed against another continuance.

### 4. Factors 4 and 7

P.N. claims the Department's and children's interest in permanency do not outweigh her constitutional rights. Additionally, P.N. alleges the court abused its discretion by not addressing her motion to partially stay the proceeding. The Department contends the court did not abuse its discretion in prioritizing the children's interests in permanency or denying the stay in full. Because the children's welfare is the primary consideration in a termination proceeding, we agree with the Department.

Parties to a civil matter have "substantial interest in expeditious conduct of their litigation." *Olympic Pipeline*, 104 Wn. App. at 359. Delayed resolution can lead to the possibility of lost memories and missing witnesses. *Olympic Pipeline*, 104 Wn. App. at 360. Children in a termination proceeding have a strong interest in a speedy resolution of the matter. *See* RCW 13.34.020.

The court gave substantial weight to the interests of the Department and the children when it denied P.N. a third and fourth continuance. The court noted

the *Olympic Pipeline* analysis "remains substantially the same as it was in August 2023, except that the interests of [the Department] and the children in having the case move forward and in permanency are even more compelling than they were in August." In addition to the fact that the children had been in out-of-home placement for 30 months, the court noted the children's interests are "likely greater in light of the trauma that they have experienced in their young lives and the need to have stability and safety in order to heal from that trauma."

P.N. admits the children's interest in permanency is a valid concern, but contends their interests do not supersede her constitutional rights. She relies on *R. M. v. Elmore County Department of Human Resources* in contending "permanency . . . may not be achieved at any cost." 75 So. 3d 1195, 1203 (Ala. Civ. App. 2011). In *R.M.,* the trial court denied R.M.'s parents two requests for a continuance of the civil trial until the criminal trial concluded. 75 So. 3d at 1198. The court of appeals reversed the decision after weighing similar factors presented in *Olympic Pipeline. R.M.*, 75 So. 3d. at 1203, 1206.

But, not only is *R.M.* nonbinding, it is not analogous to the case at hand. In *R.M.*, the trial court denied all continuances, and it had only been 18 months since the children were placed out of the home. Here, the court granted two continuances before denying P.N.'s third and fourth motions and the children had been out of the home for 30 months. Additionally, the court noted the status of the criminal case was uncertain, leaving any timeline concerning the children's permanency unknown.

P.N. also contends the issue of lost memory and missing witnesses could be alleviated by granting her a partial stay, which she requested in the alternative to a full continuance. P.N. claims a partial stay would allow the Department to present its case while safeguarding her Fifth Amendment rights. But a partial stay may still require the Department's witnesses, including the children, to testify again when P.N. puts on her case. In its order, the court stated, "For the children, having to continue to answer questions about their mother and their permanency preferences and to face the possibility of testifying at trial, creates a significant risk of re-traumatization and delays their ability to heal." The court addressed the partial stay and it found it was not in the best interest of the children.[6]

Finally, P.N. claims the court failed to consider that neither child objected to her motion for continuance and both children were in a safe, stable placement. While the court did not elaborate on the children's decision to not take a position on P.N.'s final motion for a continuance, it did note that up until that time, "[t]he children . . . have repeatedly expressed that they do not want to reunify with the mother and want permanency."

The trial court considered this factor and did not abuse its discretion in determining the interests of the children outweighed P.N.'s interests. Additionally, the court did not err in denying a partial stay.

---

[6] We note that a partial stay would delay permanency for the children.

5. Factor 5

P.N. contends the court abused its discretion by failing to address the burdens imposed upon her when it denied a continuance. The Department claims the court did address this factor, though not explicitly. We agree the trial court considered the burdens imposed upon P.N.

In addition to the burden of implicating Fifth Amendment rights, the court may also consider how collateral aspects of the proceeding may burden the defendant. *Olympic Pipeline*, 104 Wn. App at 363-64. Additional burdens imposed on the plaintiff may include diversion of resources and discovery implications. *Olympic Pipeline*, 104 Wn. App at 363-64.

Here, P.N. claims the court abused its discretion by not considering additional burdens that denying a continuance would impose upon her. P.N. contends that by testifying in the termination trial, she would provide evidence to the State in the criminal case, which would "supply an avenue for investigation by prosecutors." But, the court did consider these burdens, it just did not label the factor and analyze the burdens as it did the other factors in the analysis. The court is not required to *explicitly* label each factor, as P.N. implies; the court must only consider each factor. *See Smith v. Smith*, 1 Wn. App. 2d 122, 130, 404 P.3d 101 (2017) ("[A] trial court considering a stay request must consider and balance the eight factors identified by this court in *King v. Olympic Pipe Line Co*[*mpany*]."). And the court noted multiple times it had considered all the factors, including P.N.'s ability to participate in the termination case.

Because the trial court did consider potential burdens imposed on P.N. as a result of denying the continuance, it did not abuse its discretion.

6. Factor 6

P.N. asserts granting her motion would have benefitted judicial economy and this factor should have weighed in favor of a continuance. The Department claims the court was correct in not giving this factor significant weight. We agree judicial economy is not a significant factor in this analysis.

Parallel proceedings may impair judicial efficiency where the trials are conducted by different judges of the same court or where, after the conclusion of the criminal case, discovery in the civil matter would proceed more smoothly. *Olympic Pipeline*, 104 Wn. App. at 365. When uncertainty exists about whether a stay would reduce the resources necessary to resolve the civil matter, a court does not abuse its discretion in giving this factor little weight. *See Olympic Pipeline*, 104 Wn. App. at 365-66.

P.N. claims staying the civil proceeding until after the criminal trial would have significantly undercut her ability to successfully appeal the termination order, thereby promoting judicial economy. The court did not explicitly address this factor in its rulings on the third or fourth motion, but the court did incorporate its rulings on P.N.'s previous motions where it stated, "[T]he convenience of the court[] is not a significant factor in this determination." The court's determination that this factor was not significant was not an abuse of discretion.

7. Factor 8

Lastly, P.N. suggests that denying her motion damages the public perception of a fair judicial system. The Department does not extensively address this issue but contends the court did not err in giving limited weight to this factor. Because P.N.'s case does not concern issues of strong public interest, we agree the court did not err in giving this factor limited weigh in the analysis.

"Public interest" can be defined two ways and which definition is used determines how the factor is balanced. *Olympic Pipeline*, 104 Wn. App. at 365. The first definition of "public interest" refers to public welfare, or the protection of the public from harm. *Olympic Pipeline*, 104 Wn. App*.* at 367. This type of public interest usually arises when the government brings a civil action to enforce laws designed to protect the public. *Id.* The second type of "public interest" is the "public interest in the integrity of the judicial system." *Id.* This type of public interest can arise even when the action is purely private, and "is best served by a careful, open process of balancing competing interests." *Id.*

Here, P.N. claims that, even though her termination proceeding is a private matter, "unfairly forcing [her] to decide whether to defend herself in the termination trial or criminal case damages the public perception of a fair judicial trial." Neither the Department nor the court analyzed this factor extensively; the court simply noted "the interest of the public plays no role."

P.N.'s argument is undermined by the fact that the same logic could apply for the children's interests: The public may have great interest in seeing a speedy

resolution of a termination proceeding so children can be placed in a safe, stable, and permanent home.  Because this issue is a private matter and the integrity of the judicial system is best served by balancing competing interests, we conclude it was not error for the court to determine this factor played no role

The court considered each factor under the *Olympic Pipeline* analysis and ultimately determined the passage of time made the interests of the Department and the children even more compelling.  The court did not abuse its discretion when it found the interests of the children outweighed P.N.'s Fifth Amendment rights and denied P.N.'s motion to continue.

We affirm.

WE CONCUR: